CITY OF NASHVILLE *et al. v.* THOMAS D. LAWRENCE *et al.**

*(Nashville. December Term, 1925.)*

1. **CONTRACTS. Deeds.**

The cardinal rule in construing deeds and other written instruments is to ascertain intention of parties. (*Post, p. 610.*)

Cases cited and distinguished: Williams v. Williams, 84 Tenn., 171; Speight v. Askins, 118 Tenn., 753; Campbell v. Railroad, 150 Tenn., 431.

2. **BOUNDARIES.**

Generally, grant of land bounded on highway carries fee to center of highway, if grantor owned to center, and no specific words of description show contrary intent. (*Post, pp. 610-628.*)

Cases cited and approved: Potter v. Boyce, 73 App. Div., 383; Peabody Heights Co. v. Sadtler, 63 Md., 533; Elder v. Burrus, 25 Tenn., 364; Wilson v. Forbes, 2 Dev., 36; Dovaston v. Payne, 2 Smith's Lead. Cas., 160; Paul v. Carver, 26 Pa. St., 223; Iron Mt. Railroad v. Bingham, 87 Tenn., 522; Spaine v. Ala. & Tenn. R. R., 1 Shan., 181.

Cases cited and distinguished: Hunt v. Brown, 75 Md., 483; Martin v. Nance, 40 Tenn., 650; Salter v. Jonas, 39 N. J. Law, 470; Woodman v. Spencer, 54 N. H., 507; Bowers v. Railway Co., 119 Kan., 202; Holbert v. Edens, 73 Tenn., 205; Hamilton County v. Rape, 101 Tenn., 227; Reeves & Co. v. Allen, 101 Tenn., 412; Brumit v. Railroad, 106 Tenn., 134; Railroad v. Bingham, 87 Tenn., 522.

3. **BOUNDARIES. Where it does not appear from instrument that grantor intended to reserve fee in street, it will be presumed that grantee takes to middle of street.**

Where it appears clearly from whole instrument, in conjunction with surrounding circumstances, that grantor intended to reserve

*Description with reference to highway as carrying title to center or side of highway, see note in 2 A. L. R., 6.

City of Nashville v. Lawrence.

fee in street, such intent will be given effect, but, when it does not so appear, it will be presumed that grantee takes to middle of street. (*Post, p.* 628.)

4. **BOUNDARIES.** Description in deeds of property abutting street theretofore dedicated held not to clearly show grantor's intention to reserve fee in street.

Under deeds conveying property on each side of street theretofore dedicated to city, one describing land as along west side of new street and the other as bounded by margin of "new street" *held* not to sufficiently show intention to reserve fee in street. (*Post, pp.* 628, 629.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —Hon. James B. Newman, Chancellor.

J. W. Moore, N. R. Minick and J. Carlton Loser, for plaintiffs.

Seth Walker, Wm. Waller, Fitzgerald Hall, and Frank Slemens, for defendant, railroad.

T. J. McMorrough, for defendant, Lawrence.

Mr. Justice McKinney, delivered the opinion of the Court.

The purpose of this suit is to determine the ownership of the fee in a street which the city of Nashville proposes to abandon.

In 1880, the defendants' ancestor, John M. Lawrence, owned a lot containing about one acre of land located on the north side of Broad street, and having a depth of about two hundred eleven feet.

This lot was bounded on the west by the property of the N. & C. Railway.

Walnut street extended south from Church street to about the center of the Lawrence propery. Lawrence thereupon dedicated a thirty-five-foot street through his lot to the city, thus extending Walnut street to Broad street.

On June 2, 1880, Lawrence conveyed that part of his lot west of the street to the N. & C. Railway and that on the east of the street to James Whitworth. In those deeds the street previously dedicated was referred to as the "new street."

When the bill in this cause was filed the railroad owned the Lawrence property on both sides of said "new street."

Subsequent to said two conveyances the railway entered into an agreement with the city by which that portion of Walnut street extending from Church street to the Lawrence property was shifted to the east some twenty-five or thirty feet. The purpose of that agreement was to enable wagons and trucks to load and unload freight from the railway depot, which was west of and adjoining Walnut street. In this situation Walnut street was left with a curve in it where it entered the Lawrence property.

Before the filing of this bill the city entered into a contract with the railway by which it was agreed to shift Walnut street, where it passes through the original Law-

rence property, east onto the property of the railway, and thus straighten Walnut street from Broad to Church street. That agreement, however, was conditioned that the abandoned part of Walnut street was to become the property of the railway.

In this situation the defendants asserted title to the fee in said thirty-five-foot strip through the original Lawrence property; their contention being that, in the deeds of June- 2, 1880, their ancestor only conveyed to the side or margin of said street, the intention of the parties being that the fee in the street should remain in the grantor.

The description of the lot conveyed in the railway deed was as follows:

"Beginning at a point on the northwest corner of Broad street and a new street thirty-five feet wide (a continuation of Walnut street) and running thence westwardly along the north side of said Broad street eighty feet to a point; thence at right angles northwardly 211.4 feet to a point; thence at right angles eastwardly eighty feet to the said new street; thence along the west side of said new street 211.4 feet to the beginning."

The description in the Whitworth deed is in this language:

"Beginning at a point on the north side of Broad street at its intersection with the east side of a continuation of Walnut street; thence eastwardly along the north side of said Broad street seventy-five feet to the corner of a lot said Whitworth purchased from W. D. Taber; thence northwardly with said Whitworth's line two hundred eleven and one-half feet; thence westwardly and nearly parallel to Broad street, seventy-five feet to the

margin of the new or Walnut street; thence southwardly two hundred eleven and one-half feet to the point of beginning.''

The only question to be determined is, Did Lawrence, under a proper construction of these deeds, retain in himself the fee to said thirty-five-foot street?

The chancellor held that he did not, and the defendants have appealed and have assigned errors which challenge the correctness of his decree.

The cardinal rule to be followed in this State, in construing deeds and other written instruments, is to ascertain the intention of the parties.

In *Williams* v. *Williams,* 16 Lea (84 Tenn.), 171, it was said: ''We have most wisely abandoned technical rules in the construction of conveyances in this State, and look to the intention of the instrument alone for our guide, that intention to be arrived at from the language of the instrument read in the light of the surrounding circumstances.''

In *Speight* v. *Askins,* 118 Tenn., 753, 102 S. W., 75, the court said: ''The cardinal rule of construction of all instruments is to ascertain from all their parts the intention of the parties to them, without regard to the formal parts, and, where the rules of law will allow, to the particular language used.''

In *Campbell* v. *Railroad,* 150 Tenn., 431, 265 S. W., 676, it was said: ''It is unnecessary to cite authorities for the proposition that reservations in a deed must be construed most strictly against the grantor.''

With respect to the question under consideration, it may be said that the general rule of construction, upon

which all of the authorities agree, is thus stated by Mr. Kent:

"It may be considered as a general rule that a grant of land bounded upon a highway or river carries the fee in the highway or the river to the center of it, provided the grantor, at the time, owned to the center and there be no words of specific description to show a contrary intent." 3 Kent's Commentaries (13th Ed.), 433.

Under the title "Boundaries" we quote from 9 Corpus Juris as follows:

Section 83: "It is the established rule that a conveyance of land bounded on a street or highway carries with it the fee to the center thereof, subject to the easement of public way, provided the grantor at the time owned to the center and there are no words of specific description to show a contrary intent. In such case the street or highway is regarded as the boundary or monument, and the purchaser takes to the middle of the monument as part and parcel of the grant. So well established is this principle that it is said that the use of the words 'to the middle line of' really adds nothing to the interest given by a conveyance bounded by the street, and that, on the other hand, it would not lessen in any way the effect of such conveyance."

Section 84: "Briefly stated, the reasons in support of the rule may be outlined as follows: (1) The absence of any purpose to be served in the retention by the grantor of a narrow strip of land along the boundaries of the land conveyed, or the absence of any practical use to him for the strip of land; (2) the immediate interest of the vendee therein and its direct and substantial value to him; (3) grounds of public convenience and the prevention of

disputes as to the precise boundaries of property; (4) the embarrassment to alienation and the improvement of property, which it consists with public policy to favor, if a different rule prevailed; (5) the concern of the State itself as to who shall determine and pay for improvements; (6) and in conclusion it has been said: 'If no other reason could be assigned in support of this rule of construction, the general understanding of the people, and the extensive and immemorial practice of claiming and acquiescing in such rights, ought to have great weight.' "

Section 86: "The rule stated in section 83, supra, has never been held to be anything more than a rule of construction, to be used in ascertaining the true meaning of the parties. The question whether the conveyance carries title to the center of the street or highway is in all cases merely a matter of construction, to be determined from a consideration of the language used by the parties and from such surrounding circumstances as are proper to be considered in ascertaining their intent. And the presumption of an intention to convey to the center of the street or highway may be rebutted, although in no case will such an intention be presumed."

Section 88: "Where a conveyance of land bounded by a street or highway makes use of the expressions 'bounded by,' 'on,' 'upon,' or 'along' such street or highway, it is very generally held to indicate an intention to convey to the center thereof. And the fact that the beginning point is stated as being on the side of the road does not affect the operation of the rule, where the subsequent call is for boundary 'by' the road."

With respect to the foregoing rules of construction the authorities are in accord.

The authorities are not agreed as to what language in a deed is sufficient to overcome the presumption of intention to convey to the middle of the street.

In 9 Corpus Juris, 201, it is said:

"While there are decisions which maintain the contrary doctrine, the great weight of authority is to the effect that, where a conveyance calls for a side line of a highway, street, or alley—and the expressions, 'by the side of,' 'by the margin of,' 'by the line of,' or like terms, are usually considered as calls for side lines—the grantee's title does not extend to the center, but only to the side line, in the absence of any language in the deed, or any circumstances, indicating a contrary intention."

In 2 A. L. R., 28, the annotator says: "By the weight of authority if property is described as bounded by the side line of a highway, the grantee takes only to that line, and no right to the fee to the highway is conveyed."

The theory upon which the majority rule rests is that, by limiting the grant to the side or edge or margin of the road, it negatives an intention to convey to the center. The annotator cites in support of the rule decisions from California, Maine, Michigan, Minnesota, Massachusetts, New York, Ohio, Rhode Island, Tennessee, and Maryland. It will be noted that most of the cases cited were decided by the Massachusetts and New York courts.

This court, in *Spaine* v. *Railroad,* 1 Shan., 181, approved the rule announced by Chancellor KENT, quoted above, and said: "A different principle has been settled in Massachusetts and New York."

Again, in the same case, it is said: "The principle seems to be well settled in Massachusetts and New York that the highway or street will be excluded when the grant calls for the highway or alley."

It will thus be observed that this court differed with the two counts named, upon the construction of such deeds, more than sixty years ago.

Under their more recent decisions those courts have receded from their original position, as outlined above, and now acquiesce in the general rule announced herein. The New York court has gone a step further and held that, where a deed calls to run "along the side" of a road, the grantee will take to the center of the road when such intention appears from the whole instrument. *Potter* v. *Boyce,* 73 App. Div., 383, 77 N. Y. S., 30, affirmed in 176 N. Y., 551, 68 N. E., 1123.

One of the cases cited in support of the majority rule is that of *Hunt* v. *Brown,* 75 Md., 483, 23 A., 1029.

In that case it was said:

"This case falls directly, it seems to us, within the decision in *Peabody Heights Co.* v. *Sadtler,* 63 Md., 533 [52 Am. Rep., 519]. No one questions that a grant of land bordering on a highway carries, as a general rule, the fee to the middle of the road, if the grantor is the owner of the fee. The law never presumes that, in parting with his interest in the land adjoining a public way, the grantor meant to reserve the fee in the way, subject to the public easement. And hence a grant of land described as bordering 'on,' 'along,' or 'by' a highway, will, by legal implication, carry the fee to the centre of the road. But this presumption, like all other presumptions, may be rebutted, and if it plainly appears,

from the language used and the nature of the property, the grantor meant to limit the grant to the line of the road, and to reserve to himself the fee in the roadbed, subject to the use of it by the public as a highway, then, of course, this plainly expressed intention must prevail. And, whatever may be the rule elsewhere, it is well settled in this State that a grant of land by metes and bounds, and courses and distances, with calls for visable boundaries on the side of a highway; for instance a call for a stone planted on the south side of a road, and running thence, by the south side of the road to another stone, these calls and boundaries will be construed as defining the limits of the property thereby conveyed; and the grantee under such a grant will not take the fee to the middle of the road. Such was the description of the property in the Peabody Heights Company Case. There the lot conveyed was described as beginning at a certain stone planted in the presence of the parties on the southwest side of a road and running thence along and with the said road to another stone, planted in the presence of the parties, and the court held that such a grant did not carry the fee to the middle of the road; in other words, that the grantee was only entitled to the land within the courses and distances and boundaries thus defined. This must be the legal and logical construction of such a grant, however much courts may be inclined, from reasons of expediency and public convenience, to construe a grant as carrying the fee to the centre of a high-way. . . . Now, the ground upon which this and other like grants are held to be exceptions to the general rule, which carries the fee to the middle of the road, is the supposed intention of the parties as disclosed by the

terms of the grant. It is a matter of legal construction. At the same time we cannot shut our eyes to the fact that in nine cases out of ten there is no intention either way on the part of the grantor or the grantee. We say no intention because the roadbed itself is a highway, dedicated or condemned for public travel, and the probability of its being closed or discontinued as such is so remote that the fee in the bed of the road is seldom, if ever, considered by the parties to the grant. And hence the property conveyed is generally described as running 'to,' or 'along,' or with, the highway. In the course of time, however—in a century or half of a century, as in this case, the road is closed as a highway, and then springs up a costly and harrassing litigation about the title to this narrow strip of land, which before was practically of little or no value whatever. And to avoid litigation of this kind, involving the construction as to the intention of the parties, at the best sometimes doubtful, it would be better, it seems to us, to declare by legislative enactment that all grants hereafter made of land bordering on a highway shall carry the fee to the middle of the highway, provided the grantor is the owner of the fee, unless the fee is reserved in express terms to the grantor.''

As we interpret that case it supports the minority rule, and is in harmony with the first decision of this court dealing with the question here involved. We refer to the case of *Martin* v. *Nance,* 3 Head (40 Tenn.), 650. There the river line in the grant involved was thus described:

''Thence north 270 poles, to a sycamore on the bank of Cumberland river; thence down said river according to its several courses, 195 poles, to a large sweetgum.''

The court said: ''The court charged that these calls would carry the title to low-water mark, and thus cover the land entered by the plaintiff, although the trees called for were upon the bank, eleven poles from low-water mark, unless it were shown that a line was run and marked upon the bank at the date of the grant; in other words, that the law would presume upon these calls that the true line was at low water, unless it were proved that it was actually run and claimed at a different place.

''The case of *Elder* v. *Burrus,* 6 Humph., 364, following the North Carolina case of *Wilson* v. *Forbes,* 2 Dev. [13 N. C.], 36, settles the law of this State to be that the owners of land upon navigable streams have title to ordinary low-water mark; but, if not navigable, to the centre. So, in this case, the title of Bosley, and those claiming under him, would extend to the river at the ordinary low-water mark, and run with that from the sycamore to the gum, and, consequently, leave no vacant land. It would be otherwise, as the court charged, if it were proved that a line had been run and marked from the one corner to the other on the bank at the time of the grant. This was a question for the jury, and they have decided against it.''

The courts adopting the minority rule, or holding that a call ''to and with the side of a street'' carries the fee to the center of the road, are Pennsylvania, New Jersey, New Hampshire, Wisconsin, and Kansas.

In *Salter* v. *Jonas,* 39 N. J. Law, 470, 23 Am. Rep., 229, the description was: ''Beginning at a stake standing at the junction of the easterly line of Rowland street with the northerly line of Johnson street, as laid down

on the map of said Salter's premises, and running thence (1) along the northerly line of Johnson street," etc.

Chief Justice BEASLEY, in delivering the opinion of the court, in which his ten associates concurred, said:

"This case, as it stands before this court, presents, in a distinct form, the question whether in a conveyance of lands which, in point of fact, abut upon a street or highway, anything short of express words of exclusion will prevent the title from extending to the *medium filum* of such street or highway; the grantor, at the date of such conveyance, being the owner of such street or highway to that extent.

"This is a subject with respect to which the views of judges are much at variance. The general opinion appears to be that there is so strong a presumption of an intention to convey the soil of the highway when the premises granted actually border upon it that very plain indications of a contrary purpose are requisite to exclude it. Under the operation of such a test, the present deed would not embrace the land in dispute, for the descriptive words cannot be extended from their intrinsic force, so as to have so wide a reach. The words here used will not, if interpreted in their familiar sense, and standing by themselves, admit of being taken as delineatory of any part of the street. The only point for consideration, therefore, is whether, when the terms used have this restrictive force, they are to lose that force in the presence of the great presumption to the contrary, which is inherent in the position of affairs where a lot thus located is granted.

"There are, undoubtedly, decisions which tend very strongly to this point, and others which apparently reach

City of Nashville v. Lawrence.

it. The leading cases are carefully collected, and the general subject judiciously handled in the notes of Mr. Wallace, appended to the case of *Dovaston* v. *Payne,* 2 Smith's Lead. Cas. (7th Ed.), 160. In this series stands prominently the case of *Paul* v. *Carver,* decided by the supreme court of Pennsylvania. 26 Pa. St., 223 [67 Am. Dec., 413]. In that instance, the description carried the lot conveyed by so many feet to a designated street; 'thence southeasterly along the northerly side of said street,' and the street thus referred to was afterwards vacated, and it was held that half of it passed with the lot that was thus bounded by its northerly side. This result was justified on the broad ground "that the paramount intent of the parties, as disclosed from the whole scope of the conveyance, and the nature of the property granted, should be the controlling rule.' A number of decisions, bearing a similar aspect, are cited in this opinion, which also displays, with much clearness, the impolicy of the opposite view. The commentator, with reference to this case, and other decisions, thus sums up the result: "The rule, therefore, which the Pennsylvania courts regard as the true one, and which, perhaps, on the whole is the wisest one, would seem to be that nothing short of an intention expressed in *ipsis verbis,* to "exclude" the soil of the highway, can exclude it.'

"And this doctrine, although it cannot be said to be sustained by the greatest number of decisions, is, I think, the one that ought to be adopted in this State. In our practice, in the conveyance of lots bounded by streets, the prevailing belief is that the street to its centre is conveyed with the lot. Among the mass of the people it is undoubtedly supposed that the street belongs, as an ap-

purtenance, to the contiguous property, and that the title to the latter carries with it a title to the former. This belief is so natural that it would not be easily eradicated. As a general practice, it would seem preposterous to sever the ownership to these several particles of property. Under ordinary circumstances, the thread of land constituting the street is of great value to the contiguous lots and it is of no value separated from them. It would rarely occur that the vendee of a city lot would be willing to take it separated in ownership from the street, and it would as rarely occur that a vendor would desire to make such severance. In my own experience, I have never known such an intention to exist, and it is safe to say that whenever it does exist the conditions of the case are peculiar.

"And it is the very general notion that these two parcels of property are inseparably united, and pass as a whole by force of an ordinary conveyance; that accounts for the absence of any settled formula in general use for the description of city lots in a transfer of their title. Upon an examination of such conveyances, it would, I am satisfied, be disclosed that the utmost laxity in this respect prevails. The property conveyed is indiscriminately described as going to the street and running along it, or as going to one side of such street and thence running along such side. Such discriminations are not intentional, the purpose being to convey all the interest that the seller has in the property and in its belongings, and the mode of accomplishing this purpose is not the subject of attention; the street lot, as I have said, being regarded as a mere adjunct of the property sold, and worthless for any other use. This being undeniably the

practice and general understanding, to give a close and literal meaning to the descriptive terms employed in such instances would serve no useful purpose, but its tendency would be to defeat the object in view, and to call into life a vexatious litigation. The particular words should, in such transactions, be controlled and limited by the manifest intention which is unmistakably displayed in the nature of the affair and the situation of the parties. When the conditions of the case are altered, as if the vendor should, in a given case, have an apparent interest to reserve to himself the parcel of street in question, a different rule of interpretation might become proper. So if the abutting street referred to in a conveyance should be such only in contemplation, and should be contingent on the will of the vendor, the rule now adopted might not, and probably would not, be applicable. But where the street is an existing highway, or has been dedicated as such by the vendor, or in case, by the effect of his conveyance, he imposes on himself the obligation to devote the street to the public use, the rule then becomes the criterion by which the sense of the deed is to be ascertained. . . .

"The result to which I have come is, therefore, that this conveyance embraces the parcel of land in the street, for the reason that there are no express words of exclusion of such parcel."

In *Woodman* v. *Spencer*, 54 N. H., 507, it was held that, though the boundary was described as running "on the easterly side of the road," the grantee took to the center of the road. The court said:

"In the case before us the language is, 'Thence on the easterly side of the road,' and it is upon this expression

that so much stress is laid; the contention being that the parties meant a different thing when they said on the side of the road from what they would have meant, had they said on the road. What is there in the nature of the thing described to suggest any such difference in meaning? I see nothing. The bounding of one piece of land by or upon another fixes the line at the margin of such other piece. Carrying the line over to the center of a strip used for a highway is, as we have seen, an anomaly in the construction of deeds which rests upon a presumed intention not to exclude, or, perhaps, the want of a distinctly formed intention to exclude, what neither party may have known could come within the operation of the deed at all. It is manifest that, if we were to apply the usual canon of construction, the words 'on the road' just as clearly denote an intention to bound the land by the marginal line of the highway as do the words 'on the side of the road.' Considering only the nature of the thing and the commonly received import of the words, the two expressions are substantially identical, and might be used interchangeably without altering the sense. Generally speaking, that portion of the land of a farm which is available for the purposes of husbandry in this State includes no part of the highways that cross it. Those strips of land are ordinarily and naturally looked upon as being, to all practical intents, withdrawn as well from the control as from the beneficial enjoyment of the adjoining owner, by the servitude to which they are sub-ject. For this reason it is to be expected that the expressions, 'on the road,' or 'on the side of the road,' will find their way into deeds, when, in fact, nothing was further from the minds of the parties than that they were in that

way excluding from the operation of the instrument any part of the roads, or that the roads could in any event be affected by the deed one way or the other; and I confess it looks little less than absurd to me to attempt a distinction between two forms of expression evidently intending to convey the same idea, and which, in the common and correct use of the language, do convey the same idea to the professional as well as the unprofessional mind."

The latest decision upon the question (1925) is that of *Bowers* v. *Railway Co.*, 119 Kan., 202, 237 P., 915.

The description in that deed was:

"All that land in the west half of the southwest quarter of section ten (10), township twelve (12), south of range nineteen (19) east (West one-half of Southwest quarter, section 10, township 12, South, Range 19 East), bounded on the north by a line twenty-five feet south of and parallel to the center line of the main track of the Kansas City, Topeka & Western Railroad and on the south by a line fifty feet south of and parallel to said center line of said main track, containing 81/100 acres more or less."

The line fifty feet south of, and parallel with, the center line of the main track, was the north line of the highway, the fee in which was owned by the grantor. The highway was not mentioned in the deed, but the court held that the grantee took to the center of the highway. The court said:

"The result is the rule adopted in this State is that intent to include the highway is inferred as a matter of law, unless intent to exclude is plainly expressed."

Taking up the decisions of this court, it has already been suggested that the first case on this question (*Martin* v. *Nance,* supra) supports the minority rule.

In *Spaine* v. *Railroad,* supra, the description was lot No. 22, fronting on High street and running back two hundred feet to a twenty-foot alley. The court said:

"We are of opinion if a grant or deed calls for a street, alley, or highway, unless there are words in the deeds showing a clear intention on the part of the grantor to restrict the boundaries to the edge of the road, street, or alley, the lands of the deed will extend to the center, and the *medium filum* becomes the boundary. The right in the fee to the soil passes to the grantee, subject to the public easement. The principle, in our opinion, is in accordance with the common law, and is sustained by the weight of authority of the courts of our sister States, and is founded in reason and sound policy. In this case the lines of the plaintiff's deed extended to the center of the alley, and the *medium filum* became the boundaries; the fee vested in him, subject to the public easement, and he has the right to recover damages in this suit from defendant in error."

In *Holbert* v. *Edens,* 5 Lea (73 Tenn.), 205, 40 Am. Rep., 26, the description in the deed was: "Beginning at an elm and beech on the south side of Powell's river [nonnavigable], then down the river as it meanders," etc.

It was held that the grantee took to the middle of the river. The court approved a New York case in which it was held that, by construction of law, the grantee took to the center of the stream where the grant from the State bounded on the margin of the stream.

The most that can be said for the Whitworth deed is that the lot was bounded by the margin of "the new street."

In *Hamilton County* v. *Rape,* 101 Tenn., 227, 47 S. W., 417, it was said: "It is said, however, that the deed to the plaintiff only gave him a right to the margin of the road. The deed conveys the lots by numbers, and says they adjoin and front each fifty feet on west side of Central avenue, and extend westwardly to Grand avenue. The descriptive term, 'west side of Central avenue,' does not mean that the line is the margin of Central Avenue, but simply that the lots lie on the western side or direction from Central avenue. It does not expressly provide, nor does it at all imply that the plaintiff's line stops at the margin of the street."

In *Reeves & Co.* v. *Allen,* 101 Tenn., 412, 47 S. W., 495, it was held that, under a·deed describing the property conveyed as a house and lot on the corner of two streets, fronting a certain distance on one of the streets, such distance must be measured commencing at the margin of the other street, but the deed will convey the grantor's right to the center of the street.

The court said: "The court of chancery appeals recognizes the general rule that a deed which calls for a highway or street carries title to the middle line or center of the street, where the grantor owns to the center; but, when the intent appears to be to convey only to the edge or margin of the street, such intent will control. Accordingly, a deed calling for a side of the street does not carry title to the middle. *Iron Mountain Railroad* v. *Bingham* [87 Tenn.], 3 Pickle, 522 [11 S. W., 705, 4 L.

R. A., 622]; *Spaine* v. *Ala. & Tenn. R. R.,* 1 Shan., 181; 3 Washburn, Real Property, 635, and note.

"We think the proper rule is that, when in a convey ance a lot is described as fronting so many feet upon a given street and running back a specified distance to another street, the measurement will begin at the margin of the street or line, up to which the grantee may oc- cupy, and it will run back the distance to the margin or line of the next street, but the conveyance will be held, nevertheless, to cover the space on each street from the margin to the center, and to carry with it the grantor's right to the street, subject to the public easement; in other words, while the measurement only begins at the margin of the street and extends to the margin of the other, the conveyance will carry all the grantor's inter- est in each highway or street to its middle line if the grantor owns to such middle line. So, in a levy and sale and conveyance thereunder, when the description calls for sixty feet front on Market street and running back one hundred forty feet, the one hundred forty feet must be measured commencing at the margin of the street, though, as in case of a deed, it carries also the debtor's rights to the center of the street."

In *Brumit* v. *Railroad,* 106 Tenn., 134, 60 S. W., 507, it was said:

"It must be admitted that complainant, Brumit, has no interest in the fee of the street, since his deed only calls for its sides, and, moreover, as we have seen, his grantors expressly reserved the fee."

The foregoing presents a brief review of the decisions of this court, with one exception, bearing upon the ques- tion here involved. The cases are not in conflict with the

minority rule if, in fact, they do not more nearly tend to support it.

It is insisted by defendants, however, that this court, in *Railroad* v. *Bingham,* 87 Tenn., 522, 11 S. W., 705, 4 L. R. A., 622, approved what we have referred to herein as the majority rule.

In that case the railroad laid its track along Sixth avenue, and Mrs. Bingham instituted suit for consequent injury to her property abutting upon said avenue.

In reference to her interest in the street, the court said:

"The deed under which Mrs. Bingham holds her property calls for the side of Sixth street, The general rule undoubtedly is that a deed which merely calls for a highway or street carries title to the center thereof. This rule is in analogy to the doctrine that a grant calling for a stream not navigable carries title to the middle or thread of the stream. But where, from the language of the grant, it appears that the bank of the stream is intended to be the boundary, the title will be confined within the intended limits. So if, from the terms used, it appears that the intent was to convey only to the street, such intent will be given effect. Such a conveyance as the one under which Mrs. Bingham holds, calling for the side of the street, has been frequently construed as not carrying the fee to the center of the street or highway. *Spaine's Case,* Thompson's Tennessee Cases; Washburn, Real Estate, side page 635 and note; 2 Smith's Leading Cases, side page 216. . . .

"A correct interpretation of the deed, under which Mrs. Bingham holds her property, must confine her to the side of the street, and excludes the fee of the highway altogether."

That deed was not incorporated in the opinion, and the only statement as to its contents is that quoted above.

The record is silent as to whether Mrs. Bingham's grantor owned the fee in said avenue. If he did not, that of itself would necessarily restrict her title to the margin of the avenue.

The record indicates that Sixth avenue was a very old road and most likely her vendor did not own the fee.

In that case the question under consideration in the present cause was only involved indirectly, and most likely its facts justified the conclusions reached.

The deed to the Whitworth lot does not call "for the side line," or "by the margin of," or "by the line of," the street; hence the description in said deed does not fall within what we have denominated the majority rule.

Certainly it was not the intention of Lawrence to include the street in the Whitworth deed and to reserve it in the railway deed. Both deeds must be construed together. Apparently they were not drafted by an expert conveyancer who expressed himself in precise and exact language.

The rule deducible from all of the authorities is that each case must be determined upon its own facts, and with a view of giving effect to the intention of the parties. Where it appears clearly from the whole instrument, in conjunction with the surrounding circumstances, that the grantor intended to reserve the fee in the street, such intent will be given effect; when it does not so appear, it will be presumed that the grantee takes to the middle of the street.

After carefully considering these deeds, in connection with the circumstances surrounding their execution, we

are of the opinion that the grantor did not intend to reserve the fee in said street, and that such intention does not appear with sufficient clearness to overcome the legal presumption that the grantees took to the middle of the street.

It results that the decree of the chancellor will be affirmed.

The chancellor very equitably divided the costs. The costs of this appeal will likewise be divided, one-half to the complainants and one-half to the defendants.