McPHERSON, Respondent, v. MONEGAN et al., Appellants.

No. 8754

Submitted November 12, 1947. Decided December 15, 1947.

187 Pac. (2d) 542

Mr. Rock D. Frederick, of Whitefish, for appellants.
Messrs. Pope & Smith, of Missoula, for respondent.

MR. JUSTICE CHOATE delivered the opinion of the Court.

This is an appeal by defendants Monegan from a judgment in favor of plaintiff in an action brought to establish a private easement over certain lands formerly comprising a public highway, which highway had been abandoned by order of the county commissioners of Flathead county. In her amended complaint plaintiff also seeks to quiet her title to the fee in one-half of the land which formerly comprised said public highway and which lay adjacent to plaintiff's property.

Following are the material facts: The land involved in this action consists of three adjoining lake shore tracts on Whitefish Lake, referred to herein as tracts A, B, and C, all of which are a part of lot 2, section 4, township 31 north, range 22 west, in Flathead county. Viewed together, the three tracts constitute roughly a triangular shaped piece of land lying between the shores of Whitefish Lake on the south side and the line of the abandoned highway (hereinafter referred to as the "old road") on the north side. The defendant Joseph Monegan owns the land on the easterly side of the old road opposite the lands of plaintiff. Formerly all the lands in said lot 2 of section 34 were owned by Mrs. Jemima Samson. Between the years 1931 and 1934 Mrs. Samson conveyed tract A to one Canfield who conveyed same to the plaintiff. Mrs. Samson also conveyed to the plaintiff tracts B and C. Defendant Joseph Monegan acquired his land by conveyance from one Goodell whose title

also rested on deed from Mrs. Samson. During all the times involved in this action and up until its abandonment by the county commissioners of Flathead county, a public road 40 feet wide (the "old road" herein referred to) ran along the northeast boundary of plaintiff's land, extending from the lake in a northwesterly direction and lying between the lands of plaintiff and those of defendants Monegan. In 1943 plaintiff, her husband, and the defendant Joseph Monegan, had some oral negotiations about abandoning the road between their respective lands. Monegan represented to Mrs. McPherson that if she would sign a petition for the abandonment of the county road, half of said road would, upon such abandonment, revert to plaintiff and the other half would revert to defendant Monegan. Upon that representation plaintiff and others signed a petition for the abandonment of said public road and subsequently in November, 1943, said road was abandoned by the county ocmmissioners.

Thereafter some personal differences not material to this appeal seem to have arisen between Joseph Monegan and the plaintiff's husband, resulting in a series of acts committed by Monegan in apparent effort to claim title to all of the old road which lay between his land and that of plaintiff. Monegan first procured a deed from Catherine D. Goodell, daughter of Mrs. Jemima Samson, for all of her rights in said lot 2 not already deeded away, including the land formerly occupied by the abandoned road. In May, 1944, Monegan built a fence along the south boundary of the old road, thereby completely blocking plaintiff's land access to her property and making it impossible for her to enter or leave her property by way of the old road, thus leaving her only a way by the waters of Whitefish Lake.

*Ownership of Fee to One-half of the Old Road.* Upon the question of ownership of the fee to the land embraced in the old road, the court held that the fee to one-half of said road passed to plaintiff with the deed to tract C but did not pass with the deeds to tracts A and B. (This appears in finding of

fact No. 11 where the court places the boundaries of tracts A and B on the south side of the road and puts the boundary of tract C on the center line.) Appellant assigns no error as to the boundary of tract C.

The deeds to tracts A and B read in part as follows: "To an iron stake on the south side of the county road; thence south 23 degrees, 50' east and following *the south side of the county road* 111.5 feet, thence, etc." (Exhibits 4, 5 and 6.)

The deeds to tract B (exhibits 7 and 8), read as follows: "To an iron stake on the south side of the county road, thence south 23 degrees 55' east and *following the south side of said county road* 111.5 feet, the point hereby designated as the place of beginning of the tract to be conveyed hereby; thence continuing along the *south side of said county road* 111.5 feet to an iron stake, thence, etc."

It will be observed that the deeds for tracts A and B which were given to plaintiff described the boundary lines of said property as following the "south side of the county road." The question presented therefore is: As to tracts A and B, did the plaintiff take title only to the south side of the county road or did she take title to the center line of said road?

Both plaintiff and defendant have cited the provisions of sections 6772 and 6873, Revised Codes of Montana 1935. Section 6772 establishes a *presumption* that the owner of land bounded by a road or street owns to the center thereof but that "the contrary may be shown." Section 6873 provides that a transfer of land bounded by a highway passes the title of the person whose estate is transferred to the soil of the highway in front of the center thereof *unless a different intent appears from the grant.* So far as this case is concerned these two sections do no more than to establish a rebuttable presumption that plaintiff took title to the middle of the old road unless a different intent appears from her deed.

As to the effect of describing a conveyance of land by reference to the sidelines of a highway, the authorities are in con-

flict. 2 A.L.R. in a lengthy case note commencing on page 28, states the law as follows: "By the weight of authority if property is described as bounded by the side line of a highway, the grantee takes only to that line, and no right to the fee to the highway is conveyed." The following are a few of the cases cited in support of the above rule: Severy v. Central Pac. R. Co., 51 Cal. 194, involving a description as running "along the easterly line"; Warden v. South Pasadena Realty [& improvement] Co. 178 Al. 440, 174 Pac. 26, the conveyance reading, "along the southerly line"; Cottle v. Young, 59 Me. 105, the description being, "running on the westerly line"; Fearing v. Irwin, 4 Daly, N. Y., 385, the description involved, "along the easterly side."

In support of the minority rule that a boundary to and with the side of a street carries the fee to the center of the street unless the contrary intent appears from the deed, the case of City of Nashville v. Lawrence, 153 Tenn. 606, 284 S. W. 882, 47 A.L.R. 1266, contains an exhaustive and well reasoned discussion of this subject. We quote the following statement of the court's reason for adopting the minority rule, quoted with approval from Salter v. Jonas, 39 N. J. L. 469, 470, 23 Am. Rep. 229: " 'This doctrine, although it cannot be said to be sustained by the greatest number of decisions, is, I think, the one that ought to be adopted in this state. In our practice, in the conveyance of lots bounded by streets, the prevailing belief is that the street to its centre is conveyed with the lot. Among the mass of the people it is undoubtedly supposed that the street belongs as an appurtenance, to the contiguous property, and that the title to the latter carries with it a title to the former. This belief is so natural that it would not be easily eradicated. As a general practice, it would seem preposterous to sever the ownership to these several particles of property. Under ordinary circumstances, the thread of land constituting the street is of great value to the contiguous lots and it is of no value separated from them. It would rarely occur that the vendee of

a city lot would be willing to take it separated in ownership from the street, and it would as rarely occur that a vendor would desire to make such severance. * * *

" 'And it is the very general notion that these two parcels of property are inseparably united, and pass as a whole by force of an ordinary conveyance; that accounts for the absence of any settled formula in general use for the description of city lots in a transfer of their title. Upon examination of such conveyances, it would, I am satisfied, be disclosed that the utmost laxity in this respect prevails. The property conveyed is indiscriminately described as going to the street and running along it, or as going to one side of such street and thence running along such side. Such discriminations are not intentional, the purpose being to convey all the interest that the seller has in the property and in its belongings, and the mode of accomplishing this purpose is not the subject of attention; the street lot, as I have said, being regarded as a mere adjunct of the property sold, and worthless for any other use. This being undeniably the practice and general understanding, to give a close and literal meaning to the descriptive terms employed in such instances would serve no useful purpose, but its tendency would be to defeat the object in view and to call into life a vexatious litigation.' " [153 Tenn. 606, 284 S. W. 885.]

In the present case there is nothing in the deed from either Mrs. Samson or Canfield other than the language whose effect we have considered, to indicate an intent on the part of said grantors to retain the fee to one-half or any other part of the county road bordering on tracts A and B. Indeed, no reason whatever appears why Mrs. Samson should wish to retain the title to this narrow strip of land after it had ceased to be of any value to her. She had sold all the land on both the easterly and westerly sides of the road and the road itself was valueless to her. However, said strip of land was distinctly of value to the McPhersons' land as it was the only means of access thereto by land.

We hold that neither the language of the deed in question ▮ nor the physical facts of the case are sufficient to overcome the presumption declared by section 6772, supra, that the plaintiff became the owner of the fee to the center of the county road opposite tracts A and B as well as that opposite tract C, which latter the trial court held passed to the plaintiff when the road was abandoned.

Private Easement. The trial court held that the plaintiff ▮ was the owner of a private easement appurtenant to the land in question, of a right of way over and along said land described in the court's findings of fact and therein referred to as the "old county road," together with the right to use the same without interference as the same was used in the year 1931.

This holding finds support in the following uncontradicted facts. Between the years 1931 and 1934 Jemima Samson conveyed the land involved in this action to the plaintiff or to her predecessor in title. In 1931 and prior thereto there was a county road 40 feet in width which extended along the northeasterly edge of said lots A, B and C. This road constituted the sole means of access by land to plaintiff's said lots. It was used generally by the public as a method of ingress and egress from said lots and was also used by Mrs. Samson for that purpose. Prior to the year 1931 Mrs. Samson owned the land on both sides of said county road and she likewise owned the fee in said road, subject to the public easement therein for highway purposes. When Mrs. Samson conveyed tracts A, B, and C to the plaintiff she also conveyed said private easement over the land in the county road, which easement survived the extinguishment of the public easement upon the abandonment of the county road.

Section 6865, Revised Codes of Montana 1935, in our opinion, is applicable to the facts of this case. It reads as follows: "A transfer of real property *passes all easements attached thereto, and creates in favor thereof an easement to use other real prop-*

erty of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.'' (Emphasis ours.)

On the question whether, when such an easement for a private way is also a public road, the rule stated applies and whether the private easement survives the abandonment of the public road, the majority rule is stated as follows in 28 C. J. S., Easements,.40 : ''Where a grantor conveys land by a deed describing it as bounded by a road, street, or alley, the fee of which is vested in the grantor, the grantee acquires a right of way over the road, street, or alley. This rule has been held to apply whether or not the road is in existence, and whether or not an easement in the street is necessary. The right of the grantee, as against the grantor to an easement is not one of dedication, but of private right, depending on the construction of the deed. *The easement thus created is independent of the public right and survives the extinguishment of the public easement.*'' (Emphasis ours.)

We therefore concur with the ruling of the trial court relative to plaintiff's private easement over the former county road.

Defendants contend that an implied easement over the land of another cannot be had unless the way is *necessary* for the enjoyment of the land and that mere convenience alone cannot give a right of way. In support of that contention they cite Violet v. Martin, 62 Mont. 335, 342, 205 Pac. 221. We think this claim is without merit. In Violet v. Martin, supra, we were dealing solely with a way of necessity in which the facts were not analogous to those now under consideration. In the case at bar we are not considering the doctrine of implied easement arising from *necessity*. The facts in this case disclose an implied grant of easement which passed with the property under our statute (sec. 6865) and which arose out of the fact that Mrs.

Samson, sold land bounded in part by a road which had theretofore been continuously used by said grantor as a means of access to said land and thereafter abandoned. Under such circumstances it is immaterial whether an easement in the street is necessary. See 28 C. J. S., Easements sec. 40, and cases cited in footnote 68.

Defendants also contend that because plaintiff had a way out from her property over the navigable waters of Whitefish Lake, she cannot claim either an implied grant or a way of necessity. As we have pointed out, plaintiff's easement is not based on necessity and the fact that there may have been other means of access to her property, as by the waters of a navigable lake, did not prevent the creation of a private easement by Mrs. Samson during her ownership of the land, nor its passage to plaintiff when the latter acquired the property. In Re Harrison Avenue, Borough of the Bronx, City of New York, 267 N. Y. 64, 195 N. E. 685, it was held that the fact that a plot is bounded by two other streets does not prevent easement as to a third street.

In view of the foregoing conclusions it becomes unnecessary to discuss the question of estoppel raised in plaintiff's brief. It should also be noted that the defendant Catherine Goodell is not a party to this appeal.

The cause is remanded to the trial court with directions to amend its findings and decree in accordance herewith and so as to establish plaintiff's title to the fee in the south half of that portion of the old county road which borders tracts A, B, and C of plaintiff's land. As so modified, the decree is affirmed.

Mr. Chief Justice Adair, and Associate Justices Gibson, Angstman, and Metcalf concur.