FILED

06/16/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0379

DA 19-0379

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 157N

DEREK HARBOUR and BETHANY HARBOUR,

  Plaintiffs and Appellants,

 v.

JESSE A. WANSKASMITH,

  Defendant and Appellee.

APPEAL FROM: District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-17-913
Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

  For Appellants:

    Dale R. Cockrell, Jay T. Johnson, Moore, Cockrell, Goicoechea &
Johnson, PC, Kalispell, Montana

  For Appellee:

    Michael D. Bybee, Liesel D. Shoquist, Milodragovich, Dale &
Steinbrenner, P.C., Missoula, Montana

      Submitted on Briefs: December 18, 2019

         Decided: June 16, 2020

Filed:

         _____
              Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Derek and Bethany Harbour (Harbour) appeal an order for summary judgment issued on June 3, 2019, by the Fourth Judicial District Court, Missoula County, in favor of the Appellee, Jesse Wanskasmith (Wanskasmith). We affirm.

¶3 This dispute involves the proper location of the dividing boundary line (Common Boundary) between Harbour's property (Harbour Tract) and Wanskasmith's property (Wanskasmith Tract). The Tracts are located in Lot 75 of the Dinsmore's Orchard Homes Addition No. 5 subdivision plat (1901 Plat). The 1901 Plat was recorded on September 5, 1901, by developer Samuel Dinsmore. The dedication for the 1901 Plat provided:

> I, Samuel Dinsmore, do hereby certify that I have caused to be surveyed subdivided and platted, into lots and streets, the following described tract of land, to wit: The South half (1/2) of Section Twenty-four (24) and the North half (1/2) of the North east Quarter (1/4) of Section Twenty five (25), Township Thirteen (13) North, Range Twenty (20) West of the Principal Meridian of Montana, to be known as "DISMORE'S ORCHARD HOMES ADDITION NO. 5," and *the streets shown on the annexed plan, to be and hereby are granted and donated to the use of the public forever.*

(emphasis added). Both the dedication language and the 1901 Plat depiction identify the 60-foot streets in the subdivision separate from the lots. Unlike more modern plats, the

1901 Plat does not contain a proposed lot legal description, instead relying upon the overall dimensions of the subdivision and depiction of each lot. The engineer who oversaw the survey and plan for the 1901 Plat further provided:

> O.C. Finkelnburg, being first duly sworn, according to law, deposes and says that . . . the annexed plan is a correct representation and diagram, and that said addition is laid out according to the law and that *the width of the streets, and the measurements of the lots, and the posts for reference points are correctly represented on said plan.*

(emphasis added).

¶4 Dinsmore sold Lot 75 on February 2, 1906, and cited the 1901 Plat for the legal description of the property in the deed (1906 Deed). The property was subsequently transferred to other parties by reference to "Lot 75," until ownership in the relevant portion of Lot 75 became vested in Constance Niemeyer (Niemeyer). On September 8, 1972, Niemeyer created the key subdivision of Lot 75 relevant to this action, by transferring a portion of the property to Walter and Twila Yost (Yost) via deed (1972 Deed). The conveyance provided:

> *Beginning at the NE corner of Lot 75*, thence South along the Eastern bound[a]ry of Lot 75, 224 feet; *thence West* parallel to the Northern bound[a]ry of Lot 75, *193 feet*; thence North parallel to the Eastern bound[a]ry of Lot 75, approximately 224 feet to the Northern bound[a]ry of Lot 75; thence East along the Northern bound[a]ry of Lot 75 to the point of beginning, in Orchard Homes #5.

(emphasis added). This subdivided parcel came to be known as the Harbour Tract. The Harbour Tract within Lot 75 is bordered to the east by Tower Street. The legal description used in the transfer expressed in general and simple terms that the boundary of the conveyance starts in the northeast corner of Lot 75, and this description in the

3

1972 Deed creates the present issue. The 1972 Deed's legal description mentioning "the NE corner of Lot 75" and "193 feet" still exists in both the deed conveying title to Harbour and the deed conveying title to Wanskasmith. The origin of the 1972 Deed's legal description is unknown and has no relationship to a survey or other instrument depicting the boundaries, and more importantly, the starting point.

¶5 In May 1973, surveyor William Bayer (Bayer) completed a survey of Lot 75, and the Bayer survey and legal description was used in two subsequent documents, the first of which was a Partial Release of Mortgage obtained by Niemeyer on the Wanskasmith Tract, recorded May 31, 1973. The Partial Release of Mortgage and its attached plat (1973 Mortgage Plat) indicated the starting point for Lot 75 as the centerline of Tower Street. On June 13, 1973, after the mortgage was lifted on the Wanskasmith Tract by Niemeyer, Yost transferred the Harbour Tract back to Niemeyer using the legal description in the 1972 Deed, rather than the Bayer survey description. Later that same day—June 13, 1973—the parties executed an agreement whereby Niemeyer transferred both the Harbour Tract and the Wanskasmith Tract to Yost; this deed was not recorded until 1976.

¶6 Almost one year after this conveyance, on June 17, 1974, Yost recorded Certificate of Survey 335 (COS 335), the second document using the Bayer survey and legal description. COS 335 depicts Yost as the owner of the combined Harbour and Wanskasmith Tracts and depicts the Common Boundary between the properties as a dashed line. Apart from this dashed line, the legal description's measurements and calls in the Partial Release of Mortgage and COS 335 are identical. Both the 1973 Mortgage

Plat and COS 335 reference a corner monument composed of a "1 1/2" diameter brass cap" set at the north end of the Common Boundary, and a like corner monument set at the south end of the Common Boundary. Both documents depict the Wanskasmith Tract as varying between 158 feet at the north end to 159 feet at the south end, and both documents represent the Harbour Tract's northern and southern boundaries as 163 feet wide from the western edge of Tower Street (or 193 feet from the centerline of Tower Street). Both the Harbour Tract and the Wanskasmith Tract remained in Yost's ownership for a number of years, and in 1996 Yost commissioned an unrecorded survey of the Harbour Tract (1996 Survey). The 1996 Survey depicted the Common Boundary between the Harbour Tract and the Wanskasmith Tract as 163 feet from the western edge of Tower Street. The District Court held that the 1996 Survey demonstrated that Yost maintained the Common Boundary depicted in the 1973 Mortgage Plat and COS 335, and evidenced Yost's intent that the Common Boundary remain as monumented in the 1973 Mortgage Plat and COS 335.

¶7     In 2003, Yost errantly transferred the Harbour Tract to SAMCO, LLC (SAMCO), by and through its managing member, Sam Martin, Sr.; the transfer was errant because, based on the parties' subsequent filings and actions, it appears Yost intended to transfer the Wanskasmith Tract, and not the Harbour Tract, to SAMCO.[1]  The language of this

---

[1] After acquiring what it thought to be the Wanskasmith Tract, SAMCO obtained a permit to move a log home onto the Wanskasmith Tract. The permit contained a site plan which reflected the same dimensions of the Wanskasmith Tract as depicted on the 1973 Mortgage Plat and COS 335. SAMCO also obtained a building permit for a detached garage, a sewer permit, and an approach permit, all of which show the Common Boundary at the same location as indicated in COS 335.

errant conveyance held the same legal description created in the 1972 Deed—"Beginning at the NE corner of Lot 75" and "193 feet"—with some additional language referencing COS 335. The error created by the 2003 transfer was not discovered until 2006, and upon discovery of the faulty transfer, Yost conveyed the Wanskasmith Tract to Sam Martin, Jr.[2] The 2006 transfer again referenced both the legal description from the 1972 Deed *and* COS 335.

¶8 Harbour purchased the Harbour Tract in 2007. The "recording reference" in Harbour's deed refers to the 1972 Deed. Sam Martin, Jr. eventually lost ownership to the Wanskasmith Tract through a trustee's sale in April 2008. Five years later, in 2013, Wanskasmith acquired the Wanskasmith Tract via quitclaim deed containing the following legal description:

> *CERTIFICATE OF SURVEY NO. 335*, BEING A PARCEL OF LAND LOCATED IN LOT 75 DINSMORES ORCHARD HOMES ADDITION NO. 5, . . . AND EXCEPTING THAT CERTAIN PROPERTY *BEGINNING AT THE NE CORNER OF LOT 75*, THENCE SOUTH ALONG THE EASTERN BOUNDARY OF LOT 75; 224 FEET; THENCE WEST PARALLEL TO THE NORTHERN BOUNDARY OF LOT 75; 193 FEET . . . .

(emphasis added).

¶9 At the summary judgment hearing, the District Court was faced with deciding the proper location of the Common Boundary between the Wanskasmith Tract and the Harbour Tract. The parties presented two alternatives for the location of the Common Boundary. Harbour argued that the point of beginning for Lot 75 is the western edge of Tower Street, running 193 feet from this starting point westward to the

---

[2] Sam Martin, Jr. acquired the Harbour Tract through transfers originating with SAMCO.

6

Common Boundary. Harbour contended that Dinsmore's dedication language for the 1901 Plat, "the streets shown on the annexed plan . . . are granted and donated to the use of the public forever," created a fee simple ownership in Tower Street for Missoula County. Harbour further argues that, because of this fee simple ownership and the 1901 Plat's depiction of the streets separate from the lots, Dinsmore intended the northeast corner of Lot 75 to be placed on the west side of Tower Street, rather than in the center of Tower Street as Montana law would conventionally hold. Wanskasmith, on the other hand, argued that Lot 75 begins at the centerline of the Tower Street right-of-way, as created in the 1901 Plat, and runs 30 feet to the western edge of Tower Street, and then another 163 feet to the Common Boundary.

¶10    The District Court disagreed with Harbour's argument that Dinsmore intended to convey fee simple title in Tower Street to Missoula County, and instead held that the law in effect at the time of the dedication and grant, and the language used in the 1901 Plat, clearly indicated conveyance of a public right-of-way easement. As for confusion created in the chain of title by the language used in the 1972 Deed, the District Court found that, "[w]ithout an attendant survey and proper boundary line monumentation for the 1972 Deed, both the starting point for the legal description and the Common Boundary created thereby is ambiguous." The dual references to the 1972 Deed and COS 335 in the deeds conveying the properties to each respective party "further[ed] the ambiguity." This finding of ambiguity in the 1972 Deed, and subsequent deeds using the 1972 Deed description, led the District Court to consider extrinsic evidence outside the document itself to determine the intent behind the legal description.

7

From this evidence, and with the support of case law, the court concluded that the starting point for the 1972 Deed was intended to be the centerline of Tower Street, stating, "The proper starting point for a legal description in Montana is the center line of an adjacent public right-of-way, rather than the edge of a right-of-way as Harbour proposes." As a result, the District Court granted summary judgment in favor of Wanskasmith.

¶11 We review a district court's grant or denial of summary judgment de novo, applying the criteria of M. R. Civ. P. 56. *Alexander v. Mont. Dev'l Ctr.*, 2018 MT 271, ¶ 10, 393 Mont. 272, 430 P.3d 90. We review conclusions of law by determining whether a district court's interpretation and application of the law was correct. *Alexander*, ¶ 10.

¶12 Harbour appeals the District Court's ruling, arguing that the District Court erred when it concluded that Lot 75 extended to the center of Tower Street and COS 335 correctly depicted the Common Boundary between the Tracts. We hold that the District Court correctly determined from the facts presented that the Common Boundary is located 193 feet west of the centerline of Tower Street as monumented, and as provided in COS 335 and a retracement survey recorded as Certificate of Survey 6607 (COS 6607).

¶13 In order for Harbour's arguments regarding the legal description of the 1972 Deed to be valid, a court would first have to hold that Dinsmore's language in the 1901 Plat intended to convey fee simple title in Tower Street to Missoula County. The District Court held that an analysis of Montana law and the language of the 1901 Plat

8

indicate the conveyance of an easement, and not a fee simple interest, in Tower Street at the time of the recording. The language used by Dinsmore in the 1901 Plat, "granted and donated to the use of the public forever," was directly quoted from Mont. Pol. Code § 5005 (1895). Other statutes in effect at the time of the dedication include Mont. Pol. Code § 2620 (1895) ("By taking or accepting land for a highway, the public acquire only the right of way, and the incidents necessary to enjoying and maintaining the same . . . ."), and Mont. Civ. Code § 1292 (1895) (recodified as § 70-16-202, MCA) ("An owner of land bounded by a road or street is presumed to own to the center thereof, but the contrary may be shown."). These statutes, together with our case law, support the District Court's conclusions regarding the grant of Tower Street in the 1901 Plat.

¶14 Harbour argues that the District Court misapplied this Court's holding in *McPherson v. Monegan*, 120 Mont. 454, 457, 187 P.2d 542, 543 (1947), because the plain language of the 1901 Plat and 1906 Deed conveyed a different intent, thereby rebutting the statutory presumption that "the owner of land bounded by a road or street owns to the center thereof." The District Court considered all of the arguments that Harbour reiterates to this Court, and specifically concluded that, "[s]imply put, there is no compelling argument that the language of the [1901 Plat] created a transfer of the fee simple interest in Tower Street to the County (or City) of Missoula."

¶15 After a review of the record, we agree with the District Court's conclusion. "[A] boundary to and with the side of a street carries the fee to the center of the street unless the contrary intent appears from the deed . . . ." *McPherson*, 120 Mont. at 458,

187 P.2d at 544. The language of the dedication of the roads in the 1901 Plat is limited "to the *use* of the public forever." (emphasis added). The grant of a use right clearly denotes an easement, and not a fee simple title. Harbour owns to the centerline of Tower Street, although the 30 feet comprising Harbour's half of the road is encumbered by a public right-of-way. Mont. Pol. Code §§ 2620, 5005 (1895) and Mont. Civ. Code § 1292, (1895), make clear that the effect of Dinsmore's grant was to provide a public right-of-way easement in Tower Street, and nothing more.

¶16 In relation to the 1972 Deed, Harbour argues that the District Court erred when it held that the title chain became confused with an ambiguity introduced by the 1972 Deed. They argue that the court used extrinsic evidence to create an ambiguity by adding terms to the property description in the 1901 Plat. We disagree.

¶17 The construction of a writing granting an interest in real property is governed by the rules of contract interpretation. *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops.*, 2007 MT 159, ¶ 18, 338 Mont. 41, 164 P.3d 851. A determination of whether an ambiguity exists in a contract is a question of law. *Mary J. Baker*, ¶ 19. If the language of a contract is unambiguous—i.e., reasonably susceptible to only one construction—the duty of the court is to apply the language as written. However, if the language of a contract is ambiguous, a factual determination must be made as to the parties' intent in entering into the contract. *Mary J. Baker*, ¶ 19. Extrinsic evidence is admissible under certain circumstances to resolve an ambiguity in the property description or to apply the deed to its proper subject matter. Section 70-20-202(1), MCA; *Blazer v. Wall*, 2008 MT 145, ¶ 70, 343 Mont. 173, 183 P.3d 84.

¶18 The meaning of "Beginning at the NE corner of Lot 75" was shown by the parties to be reasonably susceptible to at least two conflicting meanings. The language was uncertain about whether it was conveying the 30 feet encumbered by the Tower Street right-of-way, by starting at the centerline of Tower Street, or simply starting at the edge of Tower Street. Without an attendant survey and proper boundary line monumentation for the 1972 Deed, both the starting point for the legal description, and the Common Boundary created thereby, is ambiguous. Additionally, the deeds conveying the Harbour Tract and the Wanskasmith Tract each reference the 1972 Deed language *and* COS 335, creating a further discrepancy in the Deed language.

¶19 The District Court relied upon § 70-20-201(2), (6), MCA, which provides rules of construction for interpreting the descriptive part of a conveyance of real property, to resolve the ambiguity created in the 1972 Deed. Section 70-2-201(2), (6), MCA, provides:

> (2) When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount.
>
> . . .
>
> (6) When the description refers to a map and that reference is inconsistent with other particulars, it controls them if it appears that the parties acted with reference to the map; otherwise, the map is subordinate to other definite and ascertained particulars.

The survey and monumentation of the Common Boundary in COS 335 provides the operative intention of Yost when later conveying the separate Harbour and Wanskasmith Tracts, as COS 335 gives the first indication and monumentation of the two separate

tracts and is thereafter used, or referenced, in subsequent conveyances. COS 335 depicts the Harbour Tract as 163 feet wide from the edge of Tower Street, and 193 feet wide from the centerline of Tower Street. This interpretation of the intention of Yost and Niemeyer in the 1972 Deed is supported by the subsequent use of the two parcels prior to the conveyances to Harbour and Wanskasmith. The description of the parcels and Common Boundary in COS 335 was later used in building permits, septic permits, and similar documents, and was also confirmed by the retracement survey, COS 6607. Given the foregoing, we determine that the District Court's conclusion that an ambiguity existed in the 1972 Deed, and its resolution of that ambiguity, was a correct interpretation and application of the law.

¶20 Finally, Harbour advances an extraneous argument that COS 335 "did not create two separate tracts," and cites the dashed line representing the Common Boundary between the Harbour Tract and the Wanskasmith Tract in support of its position. We will not address this argument beyond clarifying that the District Court did not hold that COS 335 created the Harbour and Wanskasmith Tracts. The two tracts were created through Niemeyer's separating of the estate into two tracts, and subsequent conveyance of one of those tracts to Yost. COS 335 merely surveyed and documented the measurements of those lots in compliance with Montana law and the language of the 1901 Plat.

¶21 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

12

¶22 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE