# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 21, 2011 Session

## MICHAEL HONG v. LEROY FOUST, ET AL.

### Appeal from the Chancery Court for Anderson County
### No. 08CH8810    Hon. William E. Lantrip, Chancellor

### No. E2011-00138-COA-R3-CV-FILED-FEBRUARY 8, 2012

In this boundary line dispute, the defendants sought to claim property beyond a road known as "Creek Road." The trial court concluded that the road constituted the defendants' southern boundary. However, because the plaintiff's complaint sought the adoption of a survey that conceded a small strip of land south of Creek Road to the defendants, along with the fact that the plaintiff testified that he believed that the defendants owned some property south of Creek Road, the trial court granted the defendants a strip alongside the road about four feet deep. After the defendants moved to conform their pleading to the proof and sought relief under the doctrine of adverse possession, the trial court reopened the proof to consider adverse use. Another opinion was issued awarding the defendants a strip extending approximately ten feet from the southern edge of Creek Road. The defendants appeal. We affirm the findings of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Janet L. Hogan, Knoxville, Tennessee, for the appellants, Leroy Foust and Betty Jo Foust.

David L. Flitcroft, Oak Ridge, Tennessee, for the appellee, Michael Hong.

# OPINION

## I. BACKGROUND

The property at issue in this appeal is a small, triangular shaped piece of land located on the south side of Creek Road, a county road in the Claxton Community of Anderson County, Tennessee. The plaintiff, Michael Hong, lives on the south side of the road uphill from the strip in dispute. The defendants, Leroy and Betty Foust ("the Fousts"), live on the north side of Creek Road.

The land on which the Fousts reside was conveyed to them in 1963 by Mrs. Foust's mother, whose rights originated from a 1913 conveyance held by Mrs. Foust's grandfather.[1] The disputed call in the Fousts' deed regarding their southern boundary is "from a spring and corner . . . thence Southwardly to the Creek Road."[2] The Fousts maintain that their southern boundary is not Creek Road as stated in their deed, but is actually a so-called rock monument on the edge of a faintly existing old abandoned farm road. Thus, it is the Fousts' position that their deed conveyed to them not only the small parcel in question south of Creek Road, but also additional property some 40 or 50 feet south of Creek Road. Mr. Hong contends that no rock monument by the edge of a road is mentioned in the 1913 deed. In regard to the small parcel that ignited this dispute, the Fousts have stored scrap building materials and had a small flower bed on it for several years.

Mr. Hong acknowledged that when he purchased his property about 24 years ago, he was informed that the Fousts had an ownership interest on the south side of Creek Road. Upon deciding to sell the eastern portion of his property, he obtained a survey from Dean Orr. The survey revealed that the Fousts owned a roughly four foot triangle of land. With this survey in hand, he went to the Fousts to inform them that he was interested in buying the small tract. The Fousts opined that Mr. Orr's survey was in error. Mr. Hong requested that the Fousts obtain their own survey so that the matter could be discussed and resolved. Shortly thereafter, he discovered that the Fousts had installed a large fence enclosing a roughly triangular area of 38 feet. This cause of action was filed on July 31, 2008, with a trial being held on March 3 and July 7, 2010.

---

[1] In the March 18, 1913 deed, grantors D.F. Coward and his wife, N.B. Coward, conveyed some 75 acres, more or less, to J.J. Coward, Mrs. Foust's grandfather.

[2] The corresponding call in the 1913 deed begins with a white oak corner in Swanner's line "thence South East with Swanners line 22 poles & 7 1/2 ft to a rock corner Swanners line."

At trial, Daniel Shelton, an abstractor with 13 years of title experience, described the chain of title to the properties at issue. He noted that there is no dispute as to the chain of title for each of these parties. He established that the deeds in the Fousts' chain of title are more problematic and vague. The Fousts' predecessors owned a much larger tract, but a sizable portion along Bull Run Creek was taken by TVA and is part of Melton Hill Lake.

Mr. Shelton testified regarding the 1913 deed from D.F. Coward and wife N.B. Coward to J.J. Coward. He noted that the critical corner in that deed is a 30-inch white oak corner (located near a spring) then southeast with Swanner's line 22 poles[3] and 7.5 feet (total of 370.5 feet) to a rock corner. Upon his review of the deed, he opined that the Fousts are claiming a boundary 38 feet too long.

Eugene Lackey, a registered land surveyor, testified as an expert for Mr. Hong. Upon performing his survey, Mr. Lackey determined that he couldn't "justify the claim by [the Fousts] of any property on the south side of Creek Road." He found that 370.5 feet from the white oak corner did not cross the existing Creek Road; instead, it touched its north side. Mr. Lackey

> conclude[d] that Mr. Hong's deeds or the deeds in his chain of title included the present -- a good portion of the present day location of Creek Road and I have concluded that I believe the Seahorn and Kennedy survey to be the most accurate evidence available that can be replaced on the ground that would place the line of the survey somewhere out in the present day Creek Road or right on the northerly margin of Creek Road.

Accordingly, he opined the fence put up by the Fousts "[e]xceeds the area surveyed by the Campbell Survey."

Mr. Lackey observed that the older tax maps for the Fousts' property "appear with parcel hook to indicate that there might be a minor possession across on the south side of what is called here Creek Road." He testified that a "parcel hook" indicates "that the property on one side of the road . . . is tied to a piece of property on the other side of the road." He related that on the present day tax map, however, the parcel hook and the triangular piece of property on the south side of the road is no longer present.

As to the claim by the Fousts of there being another road in the area, Mr. Lackey testified that he attempted to walk in what appeared to be an old roadbed. He noted that the area had "been fairly well obliterated" and declared "[t]hat ain't been a road in a long while

---

[3]A pole equals 16.5 feet.

and those trees are grown up." Mr. Lackey further "did not discern what [he] believe[d] to be a road on the north side of the old hog pen." He noted that he failed to find anything that resembled an "ancient fence." Mr. Lackey's conclusion was that the corner ended short of the south side of Creek Road.

Mr. Hong testified that it is his position that the Fousts own some property on the south side of Creek Road. He related that Mr. Foust told him on two separate occasions that the Fousts weren't sure as to the location of the boundary line. Mr. Hong testified that he pursued the litigation because he's "been paying taxes on [the property] for two or three years." Mr. Hong observed that he "never contended that [the Fousts] didn't own something."

According to Betty Foust, no one had ever questioned whether she and her husband owned the property in question, and they had always believed that they were paying the taxes on it. She testified as follows:

> Well, I believe in '03 my husband went to Mr. Hong's property and asked him was he aware that we owned property there. And he agreed that he would have that knowledge. So we assumed that that was the end of the, -- you know, that everything was okay. So it didn't come up again from '03 until Mike asked in '04 to purchase the property. So there were no other discussions from '03 to '04 then to '07. So when he approached us in March, March the 26th of '07, then that week, we built the fence that week.

She admitted that the fence was built because she and her husband believed that Mr. Hong was going to build a roadway through that area.

Mark C. Tucker, a registered land surveyor, testified as an expert for the Fousts. Upon reviewing old quadrangle maps, Mr. Tucker stated he "realized that the road had moved after comparing to today's quad map." He determined that there previously had been a road south of the current Creek Road. Mr. Tucker noted: "[T]here was a road bed there, I could see it. There was physically a road bed. . . . What controlled my stopping was the road location itself and old fence remnants I found in that area." From the quad map, he could "see that the road does a sharp angle and ninety right there in that area. It does not go straight like it does now." Mr. Tucker described a rock laying parallel with the old road -- "right on the edge of the old road" -- that was four feet by two feet. He opined that the boundary he found -- 408 feet from the white oak corner -- was consistent with what was described to him by all the historical witnesses. He admitted, however, that there were lots of rocks all over the place in that area.

Leroy Foust testified that the Fousts' "deed calls for 2.2 acres of land that's left after TVA took a portion of the land for the reservoir for Melton Hill Lake. And the survey measures to be a 1.7 acres." Because the Fousts were "shy about three-tenths of an acre or three hundred[th]s of an acre," he contended that Mr. Hong's survey was in error, and the property they owned extended to the old road.

The trial court entered a final judgment dated November 30, 2010, adopting the survey prepared by Mr. Orr and incorporating two stipulations of the parties - first that Mr. Hong would obtain a partial release of his mortgage for the property that was determined to belong to the Fousts and second, that the Fousts would assert no claim to the gravel driveway used by Mr. Hong. The judgment in essence awarded the Fousts a strip four feet in depth from the southern edge of Creek Road and required removal of the new fence. Costs were charged to the Fousts.

In their initial pleadings, the Fousts did not assert an affirmative defense of adverse possession. However, after the entry of the first final judgment, counsel for the Fousts moved the trial court for an order to conform the pleadings to the sworn testimony and allowed the Fousts the opportunity to prove title by adverse possession. The trial court granted the motion and heard further proof. Subsequently, the trial court created a new boundary for the parties, limited to the areas it determined were used continuously by the Fousts. The new judgment gave the Fousts a total of ten feet from the southern edge of the pavement of Creek Road, required the removal of the new fence, and divided the costs equally. The court held as follows:

> Well, the Court finds that until the utility company did their work that the property was, in essence, overgrown. But the Court is convinced that the Fousts have used portions of this property for a significant period of time and that this use has been open and notorious and has been for the record, a period of time. The Court cannot find that just placing scrap pieces of material on an overgrown portion of land is so open and notorious as to constitute an action. So, I don't find that the caps constitute a use of the property.
>
> I do find that they have occupied and used openly and notoriously a strip of land which the Court has considered to be approximately ten feet in width that is along Creek Road, and that the testimony convinces me that there was a gravel and sand pit that was used, or piles that were used by the Fousts for building purposes. So, the Court finds that there has been a possession of a strip of land along Creek Road ten feet in width to expand to encompass the area of the sand and gravel. So I would envision some sort of a triangular shape that would open up over on the far side of the property. I guess that's

near Mr. Hong's driveway boundary, if I'm recalling the testimony correctly. So that I would see a ten foot strip and then angle up to encompass the gravel and sand piles.

But the Court finds that the -- and the other testimony convinces me that the Tucker survey is, and its calls are just dramatically off as far as the length of the lot line and they could not be explained. And I find and credit the Hong survey, and I can't remember the name of the surveyor,[4] as being the more accurate survey as to what is contained in the deed. But [the Fousts] do possess a strip by virtue of adverse possession that the Court has described here this morning.

\* \* \*

The Fousts timely filed this appeal.


## II. ISSUES

The issues presented by the Fousts are restated as follows:

1. Whether the trial court erred in this boundary line dispute by failing to determine the intent of the original deeds by giving appropriate weight to the deed descriptions of natural monuments, landmarks, and testimony of historically accepted boundaries, inasmuch as the metes and bounds could not be reconciled in the conflicting surveys.

II. Whether the trial court erred by invoking adverse possession to establish an arbitrary boundary, based on use by the Fousts, when all the fact witnesses acknowledged ownership by the Fousts of a parcel of land south of the existing Creek Road, the size of the parcel being the only dispute.


## III. STANDARD OF REVIEW

This case was tried by the court without a jury. The general standard of review for bench trials applies to boundary disputes. *See Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980). Our review, therefore, is de novo upon the record of the proceedings

---

[4]Mr. Lackey.

below with a presumption of correctness as to the findings of fact of the trial court. *See* Tenn. R. App. P. 13(d); *Boarman v. Jaynes*, 109 S.W.3d 286, 289-90 (Tenn. 2003). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to de novo review with no presumption of correctness. *See Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

"In resolving a boundary line dispute, it is the role of the trier of fact to evaluate all the evidence and assess the credibility of the witnesses." *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999) (citing *Norman v. Hoyt*, 667 S.W.2d 88, 91 (Tenn. Ct. App. 1983)). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161 (Tenn. Ct. App. Mar. 31, 2008). Due to the fact-intensive nature of boundary line disputes, the trial court is best suited to assess the credibility of the witnesses and its credibility determinations are binding on this court unless the evidence preponderates against them. *Id.* at *34. When the trial court makes a determination accepting one surveyor's findings over that of another, that same deference requires this court to accept the trial court's findings. *Id.*

The following rule has been adopted in Tennessee:

> The construction of deed and other instruments and documents and their legal effect as to boundaries is a question of law. What boundaries the grant or deed refers to is a question of law; where those boundaries are on the face of the earth is a question of fact. If, therefore, the evidence concerning the location of the true boundary line between adjacent landowners is conflicting, that issue is one of fact unless the legal construction of the deed or grant is such that the boundary is determined as a matter of law.

12 Am. Jur. 2d *Boundaries* § 121 (1997) (footnotes omitted). We therefore review the trial court's finding as to the true location of the Fousts' boundary line as a finding of fact that is entitled to the presumption of correctness. Tenn. R. App. P. 13(d). Thus, we will not disturb the trial court's judgment unless the evidence preponderates against it. *Id.*

## IV. DISCUSSION

The Fousts claim that the disputed section of land became separated from the tract upon which their home is located when J.J. Coward, in 1931, conveyed an easement across

his property for the construction of Creek Road. According to the Fousts, the county moved the new road slightly north of the original dirt road. They argue that the original dirt roadbed establishes their southern-most boundary. Thus, they assert that the call "from a spring and corner . . . thence Southwardly to the Creek Road" as it appears in their deed does not really mean "Southwardly to the Creek Road" at all, but instead means "Southwardly well beyond the Creek Road to a rock monument [which is not referenced in their deed] in the edge of an old abandoned road [which is likewise not referenced in their deed]." It is the Fousts' position that their deed conveys to them not only the small parcel in question, but also additional property some forty or fifty feet south of Creek Road all the way to a rock monument at the edge of the "old road" or the "old farm road."

The Fousts' original deed to the property is dated September 28, 1963. Subsequently, the Fousts received a Correction Warranty Deed, dated March 6, 1965. The original deed description contained "15 acres, more or less;" however, excepted from that amount was "17.2 acres more or less" previously sold to the United States of America in 1961, which would have left the Fousts with -2.2 acres. The correction deed specifies that the Fousts received 2.2 acres, more of less. The boundary description in the original deed and the correction deed are otherwise identical.

The description used in the Fousts' deed description reads:

> Beginning on the West side of McHaffey Road at the Gade property line; thence West to Bulls Run Creek; thence down the Creek as it meanders to the Underwood and French property; thence East to a spring and corner to Underwood and French; ***thence Southwardly to the Creek Road***; thence East to the McHaffey Road; thence North with the McHaffey Road to the point of beginning.

(Emphasis added.). The description first appears in a deed, dated August 22, 1955, from J.J. Coward to his daughter and granddaughters Violet Walters, Betty Jo Walters, and Alma Ruth Walters. In view of the 1931 easement, Creek Road would have been in existence for approximately 24 years when Mr. Coward executed the 1955 deed.

In construing written instruments, the words expressing the intentions of the parties should be given their usual, natural, and ordinary meaning. *Ballard v. North American Life & Casualty Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983).

Mr. Hong argues that the plain, usual and ordinary meaning of the words telling you to go "Southwardly to the Creek Road" means to go in a southerly direction until you come

to Creek Road and then stop.  He contends that there is nothing ambiguous in the simple instruction that from the corner you are to go "thence Southwardly to the Creek Road."

Upon its face, "Creek Road" means the existing Creek Road.  The Fousts have failed to produce any evidence whatsoever that the old abandoned road was ever generally known as Creek Road.  Because the language of the deed is unambiguous, it must be interpreted as it is written.  *Sutton v. First National Bank*, 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981).

As noted above, when the 1955 deed was drafted, Creek Road had been in existence for almost 25 years.  It has not moved since that time.  The Fousts have provided no credible reason why Mr. Coward would have referred to Creek Road if he meant the old farm road.  Whenever a conveyance of land is bounded on a street or highway, "[i]n such case, the street or highway is regarded as the boundary or monument."  *City of Nashville v. Lawrence*, 284 S.W. 882, 883 (Tenn. 1926).  In the absence of proof indicating a contrary intention, it must be presumed that the intention of the grantor was to convey land up to Creek Road.  *See Scarbrough v. Isham*, 196 S.W.2d 73, 75 (Tenn. Ct. App. 1946).  The Fousts are not entitled to any relief on this issue.  We further find that the Fousts are estopped from taking a position on adverse possession contrary to that advanced to the trial court.  *See Stearns Coal & Lumber Co. v. Jamestown R. Co.*, 208 S.W. 334, 334 (Tenn. 1919).

## V.  CONCLUSION

The judgment of the trial court is affirmed and the case remanded.  The costs on appeal are assessed against the appellants, Leroy and Betty Foust.

_____
JOHN W. McCLARTY, JUDGE