No. 81-542

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

BRUCE J. BAILEY and HELEN L. BAILEY et al.,

Plaintiffs and Respondents,

vs.

RAVALLI COUNTY, et al.,

Defendant and Appellant.

---

Appeal from:    District Court of the Fourth Judicial District,
                In and for the County of Ravalli
                Honorable John Henson, Judge presiding.

Counsel of Record:

    For Appellant:

        Robert B. Brown argued, County Attorney, Hamilton,
          Montana

    For Respondents:

        Baldassin, Connell & Beers, Missoula, Montana
        Thomas J. Beers argued, Missoula, Montana

    For Amicus Curiae:

        William Boggs argued, Missoula, Montana

---

                            Submitted:    May 20, 1982

                            Decided:    November 3, 1982

Filed: NOV 3 - 1982

Thomas J. Kearney
                                              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal arises from an action for quiet title to one-half of the roadway adjoining lots owned by plaintiffs separately in Sunnyside Orchards No. 3, a platted orchard tract in Ravalli County, Montana. After trial on June 8, 1981, the District Court of the Fourth Judicial District found the land in question had been abandoned and closed by the Ravalli County Commissioners in 1944 and, as a result, reverted to the abutting owners, each receiving to the center of the formerly platted road.

From that judgment defendants appeal.

The plat of Sunnyside Orchards No. 3 was filed and recorded on October 16, 1909. The statutory certificate of dedication stated in part:

> "The land included in all streets, avenues,
> alleys, parks and public square shown on said
> plat are hereby granted and dedicated to the
> use of the public forever."

On April 5, 1944, a petition for county road closure with twelve signatures was filed with the Ravalli County Clerk and Recorder. The petition requested the closure of eight roads, six of which were portions of roads in Sunnyside Orchards sub-division. One of those six, the platted road between Blocks 10 and 11 to the north line of Lot 30, Block 10, and Lot 3, Block 11, is the subject of this action. H. H. Benson, the county sur-veyor, and Joel P. Antrim, a county commissioner and one of the petitioners, were appointed as viewers by the county commission on April 5, 1944. The viewers' report recommended closing the roads. This report was filed with the county clerk and recorder May 4, 1944, after having been accepted and ordered filed by the commissioners May 3, 1944. The Commissioners' Minute Book recorded the proceeding on May 3, 1944, with the following statement:

> "'We find the roads are not being used as
> public roads and are not likely to be used as
> such, and closing of said roads would not
> inconvenience the public in any degree.
> Therefore we recommend that the described

roads be closed as petitioned for.' Upon motion made and seconded report was accepted and ordered filed."

After 1944, neither the plaintiffs nor their predecessors in interest paid any taxes on any portion of the roadway, and no portion of the roadway was fenced into the lands now belonging to respondents until the spring or summer of 1980.

On October 24, 1980, the Board of Ravalli County Commissioners directed removal of obstructions in the roadway between Blocks 10 and 11 of Sunnyside Orchards No. 3. Respondent Bailey had placed a fence along the center of the road prior to the county commissioner's directive.

The following issues are presented for consideration by this Court:

1. Whether a statutory dedication of lands designated for streets and alleys in a 1909 township creates a public roadway?

2. Whether the platted road in Sunnyside Orchards No. 3 between Blocks 10 and 11 to the north line of Lot 30, Block 10, and Lot 3, Block 11, was closed and abandoned by the Ravalli County Commissioners on May 3, 1944?

3. If so, whether the land which made up that road reverted to the abutting owners each receiving to the center line of the formerly platted road?

4. Whether a subsequent purchaser of land adjoining a dedicated roadway, where the purchase does not include any portion of the roadway, acquires any interest therein if the roadway has been closed?

5. Whether the plaintiffs are entitled to a decree quieting title in them to the lands, under claim of acquisition by operation of the law, without payment of taxes or being in possession of the premises for the statutory period of time?

6. Whether Ravalli County should be ordered to pay respondents' attorney fees?

Did the statutory dedication of lands designated for streets and alleys in the 1909 plat create a public highway?

In our analysis of the controlling statutes during the periods here involved, we emphasize that there has been constant and continuous amendment and modification of the statutes pertaining to streets, roads and highways from the 1895 code on down through to the present. It therefore becomes critically necessary to consider the statutes as actually in effect at any specific date.

As previously stated, the 1909 certificate of dedication in pertinent part stated:

> "The land included in all streets, avenues, alleys, . . . shown on said plat are hereby granted and dedicated to the use of the public forever."

In the making of this plat, the owners complied with Section 3470, Revised Codes of Montana 1907, which had been in effect since at least 1895. In addition, section 3475, Revised Codes of Montana 1907, as also in effect since 1895, provided in pertinent part:

> "Every . . . grant to the public . . . marked or noted as such on the plat of the city or town, or addition, must be considered, to all intents and purposes, as a deed to the said donee."

We, therefore, find that there was compliance with the 1907 codes in the making of the dedication, and that such dedication must be considered as a deed to the public. The effect of that dedication is described in section 1337, Revised Codes of Montana 1907, which in pertinent part states:

> "All highways, roads, streets, alleys, . . . laid out . . . by the public . . ., or if laid out or erected by others, dedicated or abandoned to the public, . . . are public highways."

The foregoing section was enacted as a part of chapter 44 of the 1903 Session Laws. In addition, in the same session laws, section 1342, Revised Codes of Montana 1907, was enacted which in pertinent part stated:

> "By taking or accepting land for a highway the public acquire only the right of way and the incidents necessary to enjoying and maintaining the same . . ."

We, therefore, conclude that by the dedication, the roadway or street here in question was classified by the 1907 codes as being a "public highway." In addition, we hold that in accordance with the statutes, the plat dedication to the public was the equivalent of a right-of-way deed under which the public acquired only the right-of-way and incidents necessary to enjoying and maintaining the public highway. We, therefore, hold that the dedication did create a public roadway or highway in 1909.

Was the platted road closed and abandoned by the Ravalli County Commissioners on May 3, 1944?

Section 1635, R.C.M. 1935, provides that ten, or a majority of the freeholders of a road district, may petition, in writing, the Board of County Commissioners to discontinue any public highway. The record here establishes that such a petition was filed. Section 1637, R.C.M. 1935, describes the procedure to be followed on investigating the feasibility and desirability of granting the prayer of the petition, but is not pertinent here. Section 1638, R.C.M. 1935, is the section which describes the action to be taken by the commissioners on the petition for vacation and in pertinent part states:

> "After the commissioners shall have considered the petition, provided that not more than one member of the board of county commissioners and the county surveyor shall act as viewers in making the investigation, they shall make an entry on their minutes of their decision with reference thereto, and cause notice of their action on said petition to be sent by registered mail to the petitioners and to all landowners as disclosed by the last assessment rolls of the county, owning land abutting the roadway proposed to be . . . discontinued."

As previously described, the county commissioners complied with this section. They determined that the roads were not being used as public roads and closing the same would not inconvenience the public and concluded and recommended that the described roads be closed as petitioned for. These actions are sufficient to constitute an entry of the decision of the county commissioners in their minutes as required under the code section.

With regard to notice of their action, section 1638 does

require that notice be sent by registered mail to the petitioners and to all landowners owning land abutting the roadway, but only after the abandonment. The record does not positively disclose that such notice was given. However, we find that any question which could be raised in that regard is answered by section 1651, R.C.M. 1935, which in pertinent part states:

> "None of the proceedings authorized by this chapter shall be invalid by reason of any defect, informality or irregularity therein which does not . . . prejudice the substantial rights of property owners immediately concerned."

As contained in section 1638, the power of the commissioners to vacate was not dependent upon the giving of notice to either the petitioners or abutting landowners. The purpose obviously was to give an opportunity on the part of such parties to object after the abandonment, should they choose to do so. The evidence shows that at no time since abandonment in 1944 have the roads in question been used for street and road purposes. In the absence of any question being raised by abutting landowners or petitioners in the subsequent period of more than thirty years, we conclude that the proceedings cannot now be questioned.

We do have an additional question raised by the provisions of section 1614, R.C.M. 1935, which in pertinent part states:

> "All public highways once established must continue to be public highways until abandoned by operation of law, . . . or by the order of the Board of County Commissioners of the county in which they are situated; but no order to abandon any highway shall be valid unless preceded by due notice and hearing as provided in this act; . . ." (Emphasis added.)

On its face, this code section, which was in effect on the date of abandonment, appears to require due notice and a hearing prior to the order of abandonment. As we review the history of this section, we find that it was a part of "the General Highway Law" as enacted in Chapter 72 of the 1913 Session Laws. Chapter 72, contained various provisions with regard to the procedure to be followed upon creating or abandoning highways, and in particular, indicated a requirement that certain reports are required, notice

of a date of hearing is required, and a hearing required prior to action. However, those provisions regarding notice and hearing as set forth in the 1913 law were eliminated by subsequent amendments to the highway laws. The result was that in 1944, we have the general statement of section 1614 that an order to abandon shall not be valid unless preceded by due notice and hearing as "provided in this act," and the 1935 codes did not provide for such notice and hearing. We, therefore, conclude that the provision for due notice and hearing as described in section 1614, R.C.M. 1935, had been eliminated by subsequent amendments. As a result, we have concluded that no prior notice and hearing was required, and that the procedure followed by the county commissioners in 1944 did comply with the code sections as then in effect.

Appellants next argue that even if the road was closed by the county commissioners' action, title to the roadway does not vest in the adjoining landowners but remains in the public unaffected by the discontinuance. As stated above, the interest the public acquired by the original dedication had the effect of an easement for road purpose, not a fee simple transfer.

Section 70-17-101, MCA, provides:

> "The following land burdens or servitudes upon land may be attached to other land as incidents or appurtenances and are then called easements:

> ". . .

> "(4) the right-of-way;"

The grant of an easement is the grant of a use and not a grant of title to the land. Bolinger v. City of Bozeman (1972), 158 Mont. 507, 493 P.2d 1062. As the original dedication was only a grant of use and not one of title, title was never vested in the public. Since title was not vested in the public at any time, there was no title which can be said to now remain with the public.

A highway which is lawfully vacated or abandoned ceases to be a highway and, insofar as the public has a mere easement of way,

the title reverts to the owners of the fee discharged from the servitude. 39 Am.Jur.2d Highways, § 142 at 514. This Court chooses to follow the rule adopted in a number of states and was stated in the Oregon case of Portland Baseball Club v. City of Portland (1933), 142 Or. 13, 18 P.2d 811, 812:

> "[w]here land has been dedicated or appropriated for a public street, the fee in the street remains in the original owner subject only to the public easement, and, upon the vacation of the street, it reverts to the owner of the abutting premises freed from the easement."

Therefore, we hold upon abandonment that the fee in the street reverts to the abutting landowners, with each abutting landowner taking fee from the edge of his or her property to the center of the street.

Appellants further argue that a subsequent purchaser of land adjoining a dedicated roadway, where the purchase does not include any portion of the roadway, does not acquire any interest therein if the roadway has been closed. Section 70-16-202, MCA, provides: "An owner of land bounded by a road or street is presumed to own to the center thereof, but the contrary may be shown." Section 70-20-307, MCA, provides: "A transfer of land bounded by a highway passes the title of the person whose estate is transferred to the soil of the highway in front of the center thereof unless a different intent appears from the grant."

In interpreting the above-named statutes, this Court adopted the minority rule that a boundary to and with the side of a street carries the fee to the center of the street unless the contrary intent appears from the deed. McPherson v. Monegan (1947), 120 Mont. 454, 187 P.2d 542. We quoted from Salter v. Jonas, 39 N.J.L. 469, 470, 23 Am.Rep. 229:

> ". . . . In our practice, in the conveyance of lots bounded by streets, the prevailing belief is that the street to its centre is conveyed with the lot. Among the mass of people it is undoubtedly supposed that the street belongs as an appurtenance, to the contiguous property, and that the title to the latter carries with it a title to the former. . ."

As plaintiffs did not argue that they are entitled to a

decree quieting title in them under a claim of adverse possession, we will not comment upon that issue.

Respondent asks that appellant be ordered to pay respondent's attorney fees. Where there is a reasonable ground for appeal, a respondent is not entitled to recover damages under Rule 32, M.R.App.Civ.P. Erdman v. C & C Sales, Inc. (1978), 176 Mont. 177, 184, 577 P.2d 55, 59. Here, the ownership of the land was reasonably in issue, and the respondent's request for attorney fees on appeal must be denied.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices