FILED

07/29/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0492

DA 24-0492

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 160

ROBERT SAYERS,

Plaintiff and Appellant,

v.

CHOUTEAU COUNTY,

Defendant and Appellee.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Chouteau, Cause No. DV-8-2021-37
Honorable Kaydee Snipes Ruiz, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Daniel T. Jones, Gustafson Law Offices, Conrad, Montana

For Appellee:

Susan B. Swimley, Attorney and Counselor at Law, Bozeman,
Montana

Tara DePuy, Attorney and Counselor at Law, Livingston, Montana

Submitted on Briefs:  May 28, 2025

Decided:  July 29, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Robert Sayers appeals the Twelfth Judicial District Court's ruling that Chouteau County properly abandoned a disputed portion of Lippard Road in 1916. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Sayers filed a complaint with the District Court in 2021, seeking a declaration that Lippard Road is a public road and an order directing Chouteau County to pay him damages for loss of access to a portion of his land, in an amount to be determined at trial. Chouteau County denied that the portion of Lippard Road Sayers put at issue was a county road and asserted that it was abandoned. The disputed portion of Lippard Road runs along the head of the Missouri River Breaks. There is a long history of the parties' disputes surrounding Lippard Road. *Sayers v. Chouteau Cnty.*, 2013 MT 45, 369 Mont. 98, 297 P.3d 312; *Chouteau Cnty. v. Sayers*, 2017 MT 94N, 388 Mont. 554, 392 P.3d 613; *Sayers v. Worrall & Chouteau Cnty.*, 2020 MT 184N, 401 Mont. 554, 466 P.3d 1239. Our prior decisions do not govern or impact the disputed portion at issue in this case.

¶3     With the exception of a 1919 map that we address later in this Opinion, the parties stipulated to the record. A July 1, 1913 petition to establish a county road described the disputed portion to begin at:

> a point in the Marias and Big Sandy county road near the north west cor[ner] of Sec. 29, T. 26 N., R. 10 E. running thence east on section lines as nearly as practicable about 2 3/4 miles, thence southeasterly following the present traveled road between two coulees about one mile to the section line between Secs. 26 and 27.

¶4     A Viewers Report (dated August 27, 1913) examined the road and described that it would follow around the head of the breaks. The Chouteau County Board of County

2

Commissioners (the Board) accepted the report on June 5, 1914, and the local road supervisor posted notice of its opening on July 18, 1914. The Viewers Report and notice describes a separate, undisputed section (North Lippard Road): "And also a road beginning at the N.W. cor[ner] of Sec. 21, thence east on section line two miles, thence south 1/2 mile. All in T. 26N., R.10E."

¶5 On August 4, 1915, a petition to abandon part of Lippard Road appears in the record. The petition, signed by more than ten people, states that the

> undersigned residents and taxpayers . . . residing on or adjacent to the following proposed county road do hereby petition your honorable body to reject the county road . . . beginning at Fort Benton and Big Sandy road on South side of section 20 and being East and near the breaks in section 21 and section 22 connecting with Lippard Trail at top of hill on S.E. of section 22.

This is the disputed section in this case and will be referred to as "the Breaks Road."[1] The bottom of the petition stated: "The foregoing petition is offered as a compromise on the matter of the so called 'Lippard Road.'" An attorney (H.S. McGinley) for some of the signed petitioners to abandon (including Rollin Howell) submitted a letter objecting to the designation of Lippard Road as a public road.

¶6 Written on the petition to abandon, underneath the County's filing stamp, was a notation that the Board set a hearing for October 5, 1915; it included, "notify all parties" and "action deferred October 6, 1915[.]" The District Court found that, although a hearing did occur, there are no minutes in the record for the October 5, 1915 hearing or the decision to defer action on October 6, 1915. An October 5, 1915 letter from Howell to the Board,

---

[1] The District Court explained that the "Lippard Trail" refers to a separate portion of Lippard Road ("South Lippard Road") previously determined to be a county road in *Sayers*, 2013 MT 45, ¶ 38.

on the letterhead for H.S. McGinley, states: "According to my statement to you this afternoon to submit proposition of road, with reference to the proposed Lippard Road, the following is my proposition[.]" It described specifically two pieces of road that Howell would give the county but stated as a term, "[n]o other right of way to be declared across my land, and the porposed [sic] Lippard road to be abandoned." Looking at Howell's road description, the District Court found that the roads offered by Howell would close a gap left between the North Lippard Road from the Viewers Report and the South Lippard Road that goes to Lippard Station.

¶7 The District Court then reviewed various other documents in the record, including affidavits and letters, but concluded that the other documents failed to provide relevant information or sufficiently specify which portions of Lippard Road they referenced. Specifically, the record shows minutes from a Board meeting on January 5, 1916. The minutes state that in "the matter of the Lippard Road" it appears to the Board "that certain parties through whose land this proposed road runs object to opening said road" and

> no action toward abandonment ever having been taken by the proper officials, and the county not having lost said right-of-way by . . . operation of law: The Board of County Commissioners therefore declared that said old road is still a bona fide public highway and it is hereby ordered that the said road be immediately restored to public travel[.]"

The court reasoned this entry failed to clarify which Lippard Road is being referenced.

¶8 Information on a meeting from September 7, 1916, appears at multiple places in the record. One entry states that the Board met at 10 AM, and "[u]pon reconsideration, the viewers' report on the 'Lippard Road' . . . was accepted and the road supervisor ordered to open the same to the public as a public highway[.]" Within this entry, it provides the legal

4

description from the Viewers Report, but also says "and that said road from said north line of S1/2 SE 1/4 Sec. 22 westerly about two and three fourths miles to the Big Sandy-Loma Road be abandoned." In a separate section, the record states:

> The Lippard Road being taken up for consideration on this 7th day of Sept. 1916, with the amendment that road run from the above described route on the north line of the S1/2 SE1/4 Sec. 22 T. 26 N.R. 10 E., east about 1/4 mile on forty line, thence north on a line 15 g[sic] feet east of the section line between Sec. 22 and 23 1/4 mile to a point 15 feet east of the 1/4 corner between said secs. 22 and 23; *and that road from said north line of S1/2 SE1/4 Sec 22 westerly about 2 3/4 miles to the Big Sandy-Loma Road be abandoned*, the report of viewers is accepted this 7th day of Sept. 1916, and the route as described with amendments as noted is hereby declared a public highway[.]

(Emphasis added.) At the bottom of Howell's letter to the County is a handwritten statement: "Sept 7, 1916 The above proposition is hereby accepted this 7th day of September, 1916. G.C. Thurseu, Chairman, Board of County Commissioners."

¶9 Sayers's 2021 complaint argued that Lippard Road remains a public road requiring the County to survey, open, and maintain the road. The County responded that the portion at issue was abandoned, laches barred Sayers's claims, and a declaratory judgment action was not the correct avenue to review the County's actions. Upon order by the court, the parties briefed whether the case should be decided as a writ of review or by declaratory judgment. Sayers argued that a declaratory action, not a writ of review, was the correct avenue to determine whether the road was a county road. The County responded that it agreed that the Breaks Road was created as a county road, and the issue was whether it was abandoned. The court concluded that a writ of review was the proper legal avenue to determine whether the Board properly abandoned the disputed portion. After briefing by

5

both parties and a hearing, the District Court concluded that the writ of review was time-barred, but that regardless, the Board abandoned the disputed portion in 1916.

## STANDARDS OF REVIEW

¶10    "When a court reviews an inferior board's decision through a writ of review, it asks only whether the board exceeded its jurisdiction or regularly pursued its authority." *GBSB Holding, LLC v. Flathead Bd. of Cnty. Comm'rs*, 2025 MT 22, ¶ 16, 420 Mont. 237, 564 P.3d 29 (citing *Williams v. Stillwater Bd. of Cnty. Comm'rs*, 2021 MT 159, ¶ 11, 404 Mont. 424, 490 P.3d 1234; §§ 27-25-102(2), -303, MCA).  "On appeal, our review is limited to the same questions[,]" but we review the district court's decision to grant or deny a writ of review for abuse of discretion.  *Williams*, ¶ 11.  "A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason." *Bugli v. Ravalli Cnty.*, 2019 MT 154, ¶ 20, 396 Mont. 271, 444 P.3d 399 (*Bugli II*).  We review a district court's findings of fact for clear error and conclusions of law for correctness.  *Bugli II*, ¶ 20.

## DISCUSSION

¶11    *1. Did the District Court err when it reviewed the case as a writ of review rather than pursuant to the Uniform Declaratory Judgments Act (UDJA)?*

¶12    "It has long been the practice in Montana to litigate the existence, location, and conditions of a county road through declaratory or quiet title actions."  *Bugli v. Ravalli Cnty.*, 2018 MT 177, ¶ 20, 392 Mont. 131, 422 P.3d 131 (*Bugli I*) (collecting cases).  Like the 1915 Revised Codes of Montana, the statutes today show different methods for abandonment of county roads.  *See* § 7-14-2615(1), MCA ("All county roads once

6

established must continue to be county roads until abandoned or vacated" by operation of law, judgment of a court of competent jurisdiction, or order of the board on completion of the petition process under Title 7, chapter 14, part 26.). This Court has heard various cases disputing county roads and abandonment under different avenues. *E.g. McCauley v. Thompson-Nistler*, 2000 MT 215, ¶¶ 9, 25, 31, 301 Mont. 81, 10 P.3d 794 (in landowners' quiet title action, finding that public use for more than five years prior to July 1895 established a road as a public highway (county road) pursuant to § 2600 of the 1895 Codes and Statutes of Montana, concluding but that mere nonuse or lack of maintenance by the county did not indicate a "clear intent" to abandon a road absent notice or public hearing); *State v. Fisher*, 2003 MT 207, ¶¶ 7, 10, 317 Mont. 49, 75 P.3d 338 (in State's action to enjoin property owners from erecting fences on road that had not been abandoned by county commissioners or by court ruling, issue was whether road was abandoned by operation of law).[2] But when parties are contesting whether a board of county commissioners properly abandoned a county road pursuant to its statutory authority and process, the proper avenue is through a writ of review. *See Williams*, ¶ 15 ("As the Legislature has not provided for a direct appeal or some other method of judicial review from a county commission's decision whether to abandon a county road, the only avenue for judicial review of such decisions is through an extraordinary writ."); *Bugli I*, ¶ 16 ("If

---

[2] Sayers cites multiple cases dealing with road abandonment issues in different contexts under § 7-14-2615(1), MCA. The limited question before this Court is review of the Board's decision in 1916.

a petitioner disagrees with the Board of County Commissioners' decision regarding abandonment, the petitioner must seek a writ of review in the district court.").

¶13    Sayers argues that the court erred when it ordered the case to proceed as a writ of review, rather than as a declaratory action under the UDJA. He asserts that the UDJA and a writ of review are two distinct legal processes. Sayers argues: (1) the County has denied that Lippard Road was established as a county road and (2) the District Court concluded both that Lippard Road was not opened as a county road and also that it was abandoned. Sayers asks this Court to remand the case to determine whether the road is a county road under the UDJA. The County responds that it agrees Lippard Road is a county road created by petition, thus mooting Sayers's argument that the UDJA applies.[3]

¶14    The District Court's order states clearly that both Sayers and the County "agree that the portion of Lippard Road at issue in this case [was] petitioned to be declared as a county road. . . . The issue before this Court is whether the record in this case shows that the County was within its jurisdiction when it abandoned that portion of Lippard Road in 1916." It then reasoned that although the "parties disagree about whether the road was ever actually constructed or was more of a wagon trail[,]" the distinction was not pivotal because the issue is "whether the petitioned road along the head of the Missouri River

---

[3] We do not address Sayers's argument that the District Court erred when it considered a 1919 map, which was not available to the Board during the abandonment proceedings. The record does not support that the court considered this map in its order. Sayers filed a motion in limine to exclude the 1919 map before the court ordered the case proceed as a writ of review. Sayers also moved to strike the 1919 map in his writ of review briefing. The court, in its order on the writ of review, merely mentioned in discussing the procedural background that it had denied the motion in limine. The 1919 Map did not factor into the court's background or analysis. The record supports the District Court's decision without the 1919 Map.

breaks was abandoned; not whether it was or was not constructed." In its court filings, the County stated that neither party contests the Breaks Road was "properly petitioned, viewed, considered and posted to be opened as a county road" and that both parties agree the Breaks Road "was created as a county road[.]" In its response brief on appeal, the County unequivocally agrees that the disputed road "is a county road created by petition."

¶15 Given the County's stipulations, the issue on appeal is whether the Board properly abandoned the Breaks Road. Sayers's parsing of the court's order and the County's arguments do not convince us of an error. As the County points out, the record shows that there was a petition to create Lippard Road, a viewers report, a posting of notice to open Lippard Road, and the County Commission acceptance of the report. The September 7, 1916 meeting reflects the same. When Sayers filed a complaint seeking a declaratory judgment that the road is still a county road, the County pleaded as an affirmative defense that the Board had abandoned the disputed portion of the road and that the UDJA was not the proper avenue to determine the Board's abandonment. The District Court did not err when it decided this issue as a writ of review. *See Williams*, ¶ 15; *Bugli I*, ¶ 16.

¶16 *2. Did the District Court abuse its discretion when it concluded the County abandoned a portion of Lippard Road in 1916?*

¶17 Today, the statutory procedure and requirements for a board of county commissioners to abandon a county road are governed by Title 7, Chapter 14, Part 26, MCA ("Establishment, Alteration, and Abandonment of County Roads"); § 7-14-2615(1)(c), MCA. A person challenging a board's decision to abandon a county road must seek judicial review through a writ of review. *GBSB Holding*, ¶ 46 (citing

9

*Williams*, ¶ 15). A writ of review is an extraordinary remedy. *GBSB Holding*, ¶ 46 (citing *Williams*, ¶ 15). "Judicial review is not the functional equivalent of an appeal, and the court's inquiry is limited to whether the Board exceeded its jurisdiction" and regularly pursued its authority. *GBSB Holding*, ¶ 46 (citing *Williams*, ¶ 15); §§ 27-25-102(2), -303, MCA. "To determine if the Board kept within its jurisdiction, the court inspects the record to determine if the decision is unsupported by evidence, or the findings are contrary to all the substantial evidence, or the decision below has no evidence to support it." *GBSB Holding*, ¶ 46 (quoting *Williams,* ¶ 16) (internal quotation marks omitted). "The court's limited review of the evidence is not for the purpose of weighing it, but to ascertain whether it furnishes any legal and substantial basis for the decision." *GBSB Holding*, ¶ 46 (quoting *Williams*, ¶ 16). "A court may not reweigh conflicting evidence." *GBSB Holding*, ¶ 46 (citing *Williams*, ¶ 17).

¶18 Although we apply the standard of review outlined in §§ 27-25-102(2), -303, MCA, *Williams*, and *GBSB Holding*, the statutory scheme governing this case is different. As the parties argued and the District Court recognized, the 1915 Supplement to the 1907 Revised Codes of Montana applies because the petition to abandon was filed in August 1915. *See Bailey v. Ravalli Cnty.*, 201 Mont. 138, 142, 653 P.2d 139, 141 (1982) (reasoning that due to the constant changes to the statutes governing roads, it "becomes critically necessary to consider the statutes as actually in effect at any specific date").

10

¶19    Section 1341, R.C.M. (1915 Supplement to 1907 Revised Codes),[4] provided that public highways, once established, must remain public "until abandoned by operation of law, or by judgment of a court of competent jurisdiction, or by order of the board of county commissioners of the county in which they are situated[.]"[5]  Political Code, Chapter IV, Common Highways, R.C.M., governed the required proceedings for the Board to abandon a highway.  The petition to abandon had to be signed by "ten or a majority of the freeholders" and to particularly describe the road to be abandoned.  Sections 1362, 1363, R.C.M.

¶20    Once a petition was filed, § 1364, R.C.M., required that the board of county commissioners, at its next regular meeting, set a time within sixty days from the meeting for the viewing of the proposed road and appoint three disinterested freeholders of the county (one of whom could be the county surveyor or another competent surveyor) to act as viewers.  The viewers were required to take an oath that they would impartially and faithfully discharge their duties.  Section 1364, R.C.M.  The viewers were required to compile a report with certain information to file with the Board.  Section 1366, R.C.M.  Finally, however, § 1380, R.C.M., stated that "[n]one of the proceedings authorized by this chapter shall be invalid by reason of any defect, informality, or irregularity therein which does not materially affect the interests of the county or prejudice the substantial rights of property owners immediately concerned."

_____

[4] All references in this Opinion are to the 1915 Supplement to the 1907 Revised Codes of Montana, unless otherwise stated.

[5] This language is almost identical to the statutory language used today in § 7-14-2615(1), MCA.

¶21 The District Court reasoned that there was not enough information in the record to conclusively determine that the January 5, 1916 minutes showed a rejection of the 1915 petition to abandon. The court concluded that the record showed compliance with §§ 1362 and 1363, R.C.M. Noting that the record did not show that the Board appointed viewers or received a viewer's report, contrary to part of § 1364, R.C.M., and all of § 1366, R.C.M., the District Court relied on the curative statute (§ 1380, R.C.M.) and concluded that there was no prejudice against the immediately concerned property owners or the County. It reasoned that sufficient evidence existed in the record to support abandonment: the Board considered the petition to abandon and Howell's proposal, abandoned the route along the Missouri River Breaks, and accepted Howell's proposed route—which is where the road exists today. Overall, the court explained, the record demonstrated a lengthy and deliberative process with the immediately concerned property owners weighing in as to the best route for Lippard Road. It concluded that the petition to abandon "should be sustained pursuant to" § 1380, R.C.M.

¶22 On appeal, Sayers argues that the District Court misapprehended the evidentiary record and that the Board's decision was unsupported by substantial evidence. Sayers argues further that the Board exceeded its jurisdiction because it did not substantially comply with the statutory requirements for abandonment. He asserts that the failure to appoint viewers, receive a viewer's report, notify consenting and non-consenting parties, and conduct a properly noticed hearing on the report renders any abandonment by the Board void for lack of jurisdiction. Citing cases where this Court reviewed a Board's

12

abandonment decision, Sayers contends that the Board failed to regularly pursue its authority. Last, Sayers maintains that the curative statute does not help because there was no due notice and hearing as required by § 1341, R.C.M.

¶23 First, this Court conducted its own, thorough review of the stipulated record. We generally review a district court's factual findings for clear error, *Bugli II*, ¶ 20, circumscribed by our limited role in reviewing the evidence on a writ of review. *GBSB Holding*, ¶ 46 ("The court's limited review of the evidence is not for the purpose of weighing it, but to ascertain whether it furnishes any legal and substantial basis for the decision.") (citations and international quotations omitted). Sayers asserts that the evidence does not support the District Court's finding that a hearing on the abandonment occurred on October 5, 1915. He argues that the January 5, 1916 meeting minutes show the Board rejected the abandonment petition and that a single signature from the Board chairman on Howell's proposal letter (as opposed to all three board members acting when legally convened) was insufficient to support abandonment.

¶24 It appears from the record that at least two meetings occurred on the petition to abandon—one on October 5, 1915, and a second on September 7, 1916. The record includes the minutes and order of September 7, 1916, pursuant to § 1348, R.C.M. (requiring that the clerk record all proceedings and orders from the board of county commissioners on highways). The letter from Howell on October 5, 1915, stated: "[a]ccording to my statement to you this afternoon"—supporting that a hearing occurred that day. Sayers's assertion that no hearing on abandonment could have occurred is

13

speculative and would improperly require that we step outside our limited review of the record. Second, we do not find error in the District Court's finding that the January 1916 minutes fail to clarify what portion of Lippard Road was referenced. Unlike other parts of the record, there was no specific description of a township, range, section, and mileage reference. But even if a reading of the January 1916 minutes could support that the Breaks Road remained open as a county road, they do not show a "clear rejection" of the abandonment petition or undermine the District Court's assessment that the portion of the road was then properly abandoned months later.

¶25 Last, Sayers's dispute with the single signature at the bottom of Howell's letter overlooks the other supporting record evidence that the road was abandoned at the September 1916 hearing. The minutes describe the Board's decision to abandon the particularly described section of the Breaks Road (stating: "and that road from said north line of S1/2 SE1/4 Sec 22 westerly about 2 3/4 miles to the Big Sandy-Loma Road be abandoned") and were properly recorded pursuant to § 1348, R.C.M. The signature only provides additional context to support the Board's decision.

¶26 The District Court did not misapprehend the effect of the evidence on the record but properly conducted its limited role in reviewing the record evidence on a writ of review. *See GBSB Holding*, ¶ 46. Although the governing statutes have changed, the standard remains that we inspect "the record to determine if the decision is unsupported by evidence, or the findings are contrary to all the substantial evidence, or the decision below has no evidence to support it." *GBSB Holding*, ¶ 46 (quoting *Williams,* ¶ 16). The District Court

14

appropriately refrained from reweighing conflicting evidence, instead conducting a limited review of the evidence and finding it adequate to support the decision. *See GBSB Holding*, ¶ 46. Sayers's assertions read into the record what is not there and improperly ask us to reweigh conflicting evidence contrary to this Court's "limited review of the evidence" on a writ of review. *GBSB Holding*, ¶ 46.

¶27 Turning to the applicability of the curative statute, the plain language of § 1380, R.C.M., stated that *none* "of the proceedings authorized by this chapter shall be invalid by reason of *any* defect, informality, or irregularity[.]" (Emphasis added.) Section 1341, R.C.M., contained the one procedural prerequisite for validity. It stated that "no order to abandon any main highway shall be valid unless preceded by due notice and hearing as provided in this act[.]" The record shows that there was—at a minimum—notice and a hearing. The petition to abandon included a note to notify all parties, thus minimally satisfying notice. Then, there was at least one meeting in October 1915, as well as the meeting on September 7, 1916. The Board convened on at least two occasions to discuss the abandonment of Lippard Road before issuing its order on September 7, 1916, thus minimally satisfying a "hearing" as required under § 1341, R.C.M.[6] Even if the phrasing "as provided in this act" required the procedures called for in Chapter IV, R.C.M. (as

---

[6] Section 1341, R.C.M., provided that its requirements applied to the abandonment of any "main" highway, which appears to be different from "common" highways. Section 1340, R.C.M. ("Public highways in this state shall hereafter be classed as common highways, main highways, and state highways.") Both §§ 1340 and 1341, R.C.M., were contained in Chapter I, R.C.M. (Classification and Definitions), of the Act titled, "The General Highway Law." Section 1337, R.C.M. Chapter IV of the same Act governed "Common Highways" and contained both the procedural requirements "to Establish, Change or Discontinue Highway" (§ 1362, R.C.M.) on which Sayers relies and the curative statute (§ 1380, R.C.M.) invoked by the District Court.

opposed to simply notice and a hearing), our decision in *Reid v. Park County* supports the District Court's ruling. *See Reid v. Park Cnty.,* 192 Mont. 231, 627 P.2d 1210 (1981). In *Reid*, we analyzed the creation of a public road in 1905. We reasoned that, despite early cases refusing to allow a curative statute to cure jurisdictional defects, when the issue concerns establishment of a public road many decades earlier, "it is sufficient if the record[,] taken as a whole, shows that a public road was created." *Reid*, 192 Mont. at 236, 627 P.2d at 1213. We explained that "the burden on the public in a particular case to prove a public road was created so many years ago may well be unsurmountable." *Reid*, 192 Mont. at 236, 627 P.2d at 1213. Although *Reid* involved the *creation* of a public road, its application is equally apt to the abandonment issue here. The record is over 100 years old and, taken as a whole, supports the Board's decision to abandon the portion of Lippard Road that Sayers disputes. *See Reid*, 192 Mont. at 236, 627 P.2d at 1213. For these reasons, we are not convinced by Sayers's argument that § 1341, R.C.M., renders the abandonment jurisdictionally void.

¶28 Although the record does not show the appointment of viewers, a viewers report, or a hearing on the report of viewers specifically, those alleged defects fall within Political Code, Chapter IV, Common Highways, R.C.M., the chapter to which § 1380, R.C.M., expressly applies. Any non-compliance with the provisions of the statutory scheme does not invalidate the abandonment if such failures do "not materially affect the interests of the county or prejudice the substantial rights of property owners immediately concerned." Section 1380, R.C.M. *See Bailey*, 201 Mont. at 144, 653 P.2d at 142 (reasoning that

16

although the record did not positively disclose that notice was sent by registered mail to the petitioners and all adjacent landowners after abandonment, a similarly worded curative statute applied).

¶29 Recent cases analyzing the statutory requirements for road abandonment (*Bugli II*, ¶ 26, *Williams*, ¶ 12, and *GBSB Holdings*, ¶ 42) are distinguishable because there was no curative statute applicable in those cases. In *Chennault v. Sager*, we held that failure to comply with the statutory procedure for abandonment (specifically, the failure to obtain the required number of signatures on the petition), rendered the order for abandonment "void initially because the commissioners did not have the authority to act." *Chennault v. Sager*, 187 Mont. 455, 463-64, 610 P.2d 173, 177-78 (1980). Sayers's reliance on *Chennault* does not help for the same reason. *Chennault* did not address or apply the curative statute, which was repealed in 1974. *See* 1974 Mont. Laws ch. 317 § 209 (repealing § 32-417, R.C.M. 1947, the renumbered curative statute). The application of the curative statute here does not, as Sayers asserts, transform "the statutory procedure into a hollow ritual." Over 100 years have passed since the petition to abandon part of Lippard Road. The statutes have changed since 1915 and have evolved to be clearer about the requirements applying to abandonment (including eliminating the curative statute).

¶30 The Board had jurisdiction to consider the abandonment when it received the properly signed petition to abandon the road. The record shows that the Board gave notice and held a hearing. Although there is no record that the Board complied with other statutory requirements, we agree with the District Court's reasoning that the curative statute

17

applies, and the abandonment did not materially affect the interest of the County or prejudice the substantial rights of property owners immediately concerned. The Board considered the proposal over time and accepted what appears to be an alternative access route, which is the route used today. As the District Court reasoned, the record shows that adjacent property owners objected to opening the Breaks Road as a county road by filing the petition to abandon and instead proposed a different route to reach Lippard Station and connect to the Big Sandy-Loma Road. The District Court did not err in applying the curative statute. When taken as a whole, the record is sufficient to show abandonment. The Board did not exceed its jurisdiction or fail to regularly pursue its authority.[7]

¶31 The District Court properly reviewed the record, determined it supported the decision to abandon a portion of Lippard Road, and correctly applied the curative statute in existence at the time. Given the record evidence from over 100 years ago, the District Court did not act arbitrarily, without conscientious judgment, or exceed the bounds of reason when it concluded that the Breaks Road (the disputed portion of Lippard Road) was abandoned in 1916. As we uphold the District Court's decision on the merits of the writ

[7] In his brief, Sayers cites three additional statutes not applied by the District Court. Sections 1367, R.C.M. (which referred to a hearing on the viewers report for "all parties interested for and against the proposed alteration of the new road") and 1368a, R.C.M. (which prescribed the determination of damages "accruing to any person by reason of altering, changing, or laying out such roads"), both were contained in Political Code, Chapter IV, Common Highways, R.C.M., and (even if applicable to abandonment) would still be covered by the curative statute. Section 1349.4, R.C.M., which was contained in Political Code, Chapter III, Road Districts and Duties of Officers, R.C.M., provided that the Board of County Commissioners "must abolish or abandon in the manner provided in this act such public highways as are not necessary for the public convenience."

of review, we do not address the parties' arguments regarding whether Sayers's complaint was time-barred.[8]

## CONCLUSION

¶32 The District Court did not abuse its discretion in ruling on the writ of review. Record evidence supported the Board's abandonment decision, and the curative statute in effect in 1915 addressed any procedural deficiencies. We affirm the District Court's order that the County abandoned the disputed portion of Lippard Road in 1916.

/S/ BETH BAKER

We Concur:

/S/ KATHERINE M BIDEGARAY
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON

---

[8] Sayers argues that a statute of limitations does not apply to the writ of review here. The County counters that the issue is time-barred. Although the County raised the doctrine of laches as an affirmative defense, it did not pursue this argument before the District Court. We decline to address it on the merits without a properly developed record. *See Cole v. State*, 2002 MT 32, ¶ 25, 308 Mont. 265, 42 P.3d 760 ("We have repeatedly stated that in order to apply the doctrine of laches, a showing must be made that the passage of time has prejudiced the party asserting laches or has rendered the enforcement of a right inequitable."). *Cf. Bailey*, 201 Mont. at 145, 653 P.2d at 142 ("In the absence of any question being raised by abutting landowners or petitioners in the subsequent period of more than thirty years, we conclude that the proceedings cannot now be questioned.").